Samuel WILLIAMS, Plaintiff,

v.

Thomas COUGHLIN, III, et
al., Defendants.

No. 83 CIV. 6641 (PKL).

United States District Court,
S.D. New York.

Jan. 8, 1987.

Samuel Williams, pro se.

Robert Abrams, Atty. Gen. of N.Y., New York City, for defendant; Abigail I. Petersen, of counsel.

LEISURE, District Judge:

Defendants have moved for summary judgment dismissing plaintiff's complaint. In support, defendants submitted the required statement under Civil Rule 3(g) of the Southern District of New York. In addition, defendants submitted an affidavit of Dr. Saul Rosenblum, medical director of the Green Haven Correctional Facility ("Green Haven"), sworn to on July 31, 1986, and an affidavit of Joan Brewster, diet cook at Green Haven, sworn to on July 30, 1986. Defendants also submitted the transcript of a deposition of plaintiff conducted on February 13, 1985 (the "Deposition"). In opposition to defendants' motion, plaintiff submitted his affidavit, sworn to on August 29, 1986 ("Plaintiff's Affidavit").

Plaintiff's complaint seeks injunctive relief and monetary damages under the Civil Rights Act, 42 U.S.C. § 1983, for an alleged deprivation of his eighth amendment rights. Plaintiff claims that prison authorities have inflicted cruel and unusual punishment by acting in a manner deliberately indifferent to his serious medical and dietary needs. Specifically, plaintiff claims that the meals provided to him by defendants are insufficiently frequent and improperly prepared, in view of his medical condition.

In an opinion dated January 13, 1986 (the "Opinion") [Available on WESTLAW, DCTU database], this Court denied plaintiff's motion for injunctive relief.[1] This denial, however, was made "without preju-

1. After plaintiff's motion for injunctive relief was submitted, the Court granted the request of his counsel to be relieved.

dice to renewal if it should develop that plaintiff is not being fed in accordance with" the orders of Dr. Rosenblum. Opinion at 10. The Court stated that it was "cognizant of the fact that the recent efforts made by defendants to meet plaintiff's medical needs may have been spurred by this lawsuit." *Id.* Moreover, the Court stated that it was "concerned that plaintiff continue to receive his diet and that efforts are made to be sure … that prison personnel are made aware of patients with special dietary needs." *Id.*

Under Fed.R.Civ.P. 56(e), it is plaintiff's burden to respond to the motion for summary judgment by setting forth "specific facts showing that there is a genuine issue for trial." *See also Celotex Corp. v. Catrett,* — U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). On the basis of a careful examination of plaintiff's affidavit, it is clear that plaintiff has not alleged the occurrence of any specific instances since the January 13 decision, in which he was not fed in accordance with Dr. Rosenblum's orders. Instead, plaintiff continues to argue that Dr. Rosenblum's orders are insufficient to protect his medical condition. Moreover, it is clear based on a thorough review of plaintiff's affidavit and his deposition that there exists no genuine issue of material fact to be tried. *See* Deposition at 10, 13, 15–16, 41–43, 52–53, 59–60, 61–62, 71–75.

Due to a duodenal ulcer plaintiff has had two-thirds of his stomach removed. Subsequent to the operation, plaintiff has suffered from hypoglycemia and an ailment called the "dumping syndrome." These conditions require that he eat from a restricted diet. He alleges that whenever he eats food not on the restricted diet he suffers from dizziness, nausea and blackouts. Plaintiff has been incarcerated at several New York state correctional facilities. While at Ossining Correctional Facility beginning in January 1983, plaintiff was allowed six feedings per day until May 1983. Plaintiff was transferred to the Great Meadow Correctional Facility in October 1983, and there was permitted a bland diet with an extra tray that he was allowed to take to his cell after each meal. In September 1984, plaintiff was transferred to Green Haven. The medical director at Green Haven, Dr. Rosenblum, has allowed plaintiff only three daily feedings that are supplemented by snacks. Plaintiff complains of the failure of his current diet to comply with the treatment he has previously received.

At an October 2, 1984 examination, Dr. Rosenblum recommended that plaintiff be given six feedings per day. At an October 31, 1984 examination, however, Dr. Rosenblum determined that there was no need for plaintiff to receive six full meals per day. He recommended that plaintiff receive a high protein diet and that he be allowed to take food back to his cell for snacks between meals. Except for breakfast, plaintiff's meals are not the same as the general prison population's daily food, but instead consist of items on a separate menu which is given only to those inmates, including plaintiff, with special dietary needs. As to breakfast, inmates with such needs are counseled about what they can safely consume, and are allowed to select those items from the general population's daily breakfast menu.

On March 19, 1985, Dr. Rosenblum specified that in addition to his breakfast, plaintiff should be allowed to take an extra cereal back to his cell. Moreover, he specified that plaintiff should be permitted to eat whatever was on his lunch tray and to take back to his cell whatever he did not eat, plus an extra fruit. Dr. Rosenblum directed that plaintiff should receive with his dinner a supplement consisting of fruit and a source of protein such as cheese, turkey or a boiled egg.

On several subsequent occasions, plaintiff's diet was further defined. On July 1, 1985, plaintiff met with Ms. Brewster and Dr. Rosenblum. They decided that plaintiff would receive, in addition to his three main meals, dry powdered milk and an extra cereal, hard boiled eggs or peanut butter, plus one extra fruit. As a result of further changes, plaintiff should now re-

ceive, in addition to his three full meals: an extra box of cereal in the morning; a piece of cheese, piece of fruit, and cup of juice at lunch; and a hard boiled egg, piece of fruit, cup of juice, and piece of bread at dinner. Moreover, when the special diet menu calls for turkey roll, plaintiff should receive a substitute such as cheese or an egg. The type of food that plaintiff can consume outside the mess hall is restricted because of the lack of heating and refrigeration appliances in plaintiff's cell.

Reaching the conclusion that there are not any triable issues of fact "is but the first stage in deciding a motion for summary judgment." *S.E.C. v. Research Automation Corp.*, 585 F.2d 31, 35 (2d Cir. 1978). The Court must next "examine the undisputed facts to determine whether they establish that 'the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)).

Plaintiff disagrees with the judgments of the medical staffs of the New York state correctional facilities where he has been incarcerated that his diet, which has undergone several modifications, has been adequate to protect his health. However, it is settled law in this Circuit that "mere negligence in the treatment of a prisoner's physical condition, or claims based on differences of opinion over matters of medical judgment, fail to rise to the level of § 1983 violations." *Sloan v. Zelker*, 362 F.Supp. 83, 84 (S.D.N.Y.1973) (quoting *Corby v. Conboy*, 457 F.2d 251, 254 (2d Cir.1972)). *See also Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976); *United States ex rel. Hyde v. McGinnis*, 429 F.2d 864, 867–68 (2d Cir. 1970); *Church v. Hegstrom*, 416 F.2d 449, 450–51 (2d Cir.1969). *Cf. Youngberg v. Romeo*, 457 U.S. 307, 323, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982) (in action by civilly committed mental patient, § 1983 liability arises "only when the decision by the [medical] professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment").

Plaintiff also makes allegations that various medical prescriptions have not been followed, and specifically, that Greenhaven's non-professional mess hall staff has disregarded the directions of Dr. Rosenblum. Under the eighth amendment, "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Gamble*, 429 U.S. at 104–05, 97 S.Ct. at 291 (citation omitted). *See also Martinez v. Mancusi*, 443 F.2d 921, 924 (2d Cir.1970), *cert. denied*, 401 U.S. 983, 91 S.Ct. 1202, 28 L.Ed.2d 335 (1971). Plaintiff may demonstrate the deliberate indifference of prison officials by showing that they intentionally interfered with prescribed treatment or intentionally denied access to medical care. *Gamble*, 429 U.S. at 104–05, 97 S.Ct. at 291–92; *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir.1977). Repeated instances of denied or delayed medical care may bespeak a deliberate indifference by prison authorities. *Todaro*, 565 F.2d at 52. Plaintiff's affidavit and deposition, however, do not contain facts involving manifestations of prison officials' deliberate indifference in the form of intentional interference with prescribed treatment. *See* Plaintiff's Affidavit at 3, ¶ 8; Deposition at 24–27, 29, 42–43, 51–53, 61–62. *See also Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir.1984) (where underlying dispute exists as to whether legitimate medical claims were deliberately disregarded as punishment for past disciplinary violations or for other invalid reasons, resolution must be by trier of fact); *Cruz v. Ward*, 558 F.2d 658, 662 (2d Cir.1977), *cert. denied*, 434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978) (deliberate indifference to prisoners' serious medical needs was not shown where record did not support finding of decisions "made in bad faith, out of pique, or on irrational grounds").

Accordingly, defendants are entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, — U.S. ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Plaintiff's complaint is therefore dismissed.

SO ORDERED.