Dennis **LISCIO**

v.

Thomas **WARREN**, William **Tuthill**, and Robert E. **Lebson**, M.D.

**Civ. No. N–86–288(JAC).**

United States District Court, D. Connecticut.

July 13, 1989.

Jeffrey J. Drewniany, Williams & Wise, New Haven, Conn., for plaintiff.

Robert F. Vacchelli, Asst. Atty. Gen., Hartford, Conn., for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

In this civil rights action brought pursuant to 42 U.S.C. § 1983, plaintiff Dennis Liscio alleges that he received inadequate medical attention while he was an inmate in the custody of the Connecticut Department of Corrections.[1] Defendants seek summary judgment as to this action in its entirety.

At oral argument on this matter, the court granted, absent objection, defendants' Motion for Summary Judgment (filed Apr. 27, 1988) as to any aspect or portion of this suit stating claims against the defendants in their official capacities and as to any claims against any defendant under the Fourth, Fifth, and Sixth Amendments and the equal protection clause of the Fourteenth Amendment to the United States Constitution.[2] The court finds that summary judgment is warranted as to all defendants on plaintiff's remaining claims under the Eighth Amendment and the due process clause of the Fourteenth Amendment and that plaintiff's pendent state tort claims should be dismissed.[3]

---

1. At the time relevant to the complaint, defendant Thomas Warren was the warden at the Union Avenue facility in New Haven, Connecticut; defendant William Tuthill was the warden at the New Haven Correctional Center; and defendant Robert Lebson, M.D. was a contract physician at the New Haven Correctional Center.

2. *See* Order (entered Oct. 17, 1988).

3. At oral argument on October 14, 1988, the court ordered plaintiff to file a supplemental brief and a revised statement of material facts in dispute no later than October 18, 1988. Nothing ever was received from the plaintiff, and this matter therefore is long since ripe for decision by the court.

## BACKGROUND

The material facts presented by this case are not contested.[4] The plaintiff, Dennis Liscio, was booked into the Union Avenue Detention Center in New Haven as a pre-trial detainee on June 18, 1985. In the course of intake screening, plaintiff exhibited symptoms consistent with drug withdrawal. The plaintiff's "Intake Medical Screening Form" indicates that the booking officer answered the question "Are there any visible signs of Alcohol/Drug withdrawal symptoms?" by marking a circle around "Drug withdrawal" and around the word "YES" and by writing the word "Heroine" (sic).[5] On the reverse side of that form, which is signed by the plaintiff, the "Officer–Inmate Questionnaire" indicates that the plaintiff advised the intake officer that he was withdrawing from the use of heroin, and the "Remarks" section states: "Placed on Drug Withdrawal Med."[6]

While detained at the Union Avenue facility on June 21, 1985, the plaintiff manifested bizarre behavior and appeared to be experiencing hallucinations.[7] At about 12:05 a.m. on June 21, 1985, the plaintiff was transferred to another cell for monitoring, and his hallucinations appeared to escalate.[8] At approximately 1:00 a.m. officers at Union Avenue consulted with Warren Warden and then transported the plaintiff to the infirmary at the New Haven Correctional Center for a medical evaluation.[9]

Upon arrival at the New Haven Correctional Center infirmary, the plaintiff was examined by David Carr, R.N., who diagnosed "paranoid psychotic behavior due to heroin abuse."[10] Nurse Carr noted that plaintiff had "trac marks" on both arms and denied any other drug abuse except heroin.[11] Nurse Carr directed that no medications were to be given to the plaintiff but that he was to be assessed by Dr. Lebson in the morning and, in the interim, was to be placed in two-point restraints "to prevent injury to himself" and to be checked every fifteen minutes.[12] Logs from the infirmary indicate that a third restraint was added around 3:10 a.m. "due to aggressive behavior" while in two-point restraints; plaintiff later was placed in four-point restraints.[13]

Dr. Lebson examined the plaintiff around 10:35 a.m. on June 21, 1985.[14] Dr. Lebson observed "agitated behavior" and directed a "withdrawal regimen" and evaluation by a psychiatrist.[15] The infirmary log indicates that plaintiff refused lunch and dinner on June 21, 1985; plaintiff also refused breakfast on June 22, 1985, but later accepted a high protein drink and eight ounces of water.[16] The plaintiff continued on withdrawal medication and in restraints

4. *Compare* Statement of Material Facts as to Which Defendants Contend There Are No Genuine Issues To Be Tried (filed Apr. 27, 1988) *with* (Plaintiff's) Statement of Material Facts in Dispute (filed Oct. 11, 1988).

5. Affidavit with Exhibits of Thomas Warren, William Tuthill and Robert Lebson, M.D. in Support of Defendants' Motion for Summary Judgment (filed Apr. 27, 1988) ("Defendants' Affidavit"), Exhibit A.

6. *Id.* There is no further indication in the record of whether any withdrawal medication actually was administered to the plaintiff while at the Union Avenue facility. *See infra* note 30.

7. Defendants' Affidavit, Exhibit B (Union Avenue Detention Center incident report dated June 21, 1985).

8. *Id.*

9. *Id.* ¶ 17.

10. *Id.* ¶ 21; *id.* at Exhibit D (New Haven Correctional Center Medical Incident Report dated June 21, 1985).

11. *Id.* at Exhibit D.

12. *Id.* ¶¶ 18–21; *see also id.* at Exhibit C (Use-of-Force Supplementary Report from 1:30 a.m. on June 21, 1985 reporting application of handcuff to wrist and leg iron to ankle).

13. *Id.* at Exhibit E (New Haven Correctional Center infirmary log entry for June 21, 1985).

14. *Id.* at Exhibit E.

15. *Id.* at Exhibit F (Outpatient Clinical Record on Dennis Liscio entry dated June 21, 1985). The psychiatrist, Dr. August, declined to evaluate the plaintiff and referred the matter back to Dr. Lebson as a "medical problem." *Id.* (entry dated June 22, 1985).

16. *Id.* at Exhibit E; *id.* ¶¶ 26 & 27.

through June 23, 1985, and the infirmary log indicates that plaintiff continued hallucinating.[17] Plaintiff experienced swelling in his left arm from pulling on his restraints, and Warden Tuthill approved use of a cloth passive restraint on that arm.[18]

On June 24, 1985, Dr. Lebson again examined the plaintiff and ordered that he be sent to St. Raphael's Hospital in New Haven "for assessment of hydration & fluid if necessary."[19] Plaintiff was hospitalized and treated for renal failure, rhabdomyolysis,[20] and dehydration as well as withdrawal from alcohol, heroin, and cocaine abuse.[21] Plaintiff was discharged to the New Haven Correctional Center on June 27, 1985.[22]

## DISCUSSION

The court may grant summary judgment where the moving party has demonstrated that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). A motion for summary judgment thus is the appropriate vehicle "to isolate and dispose of factually unsupported claims or defenses." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

In making a summary judgment determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the plaintiff. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513; *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986) (Feinberg, C.J.), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d at 12. Mere conclusory allegations and denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980); *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355.

17. *Id.* at Exhibit E.

18. *Id.* ¶ 28; *id.* at Exhibit F (Outpatient Clinical Records entries for June 23, 1985).

19. *Id.* at Exhibit F (entry for June 24, 1985); *see also id.* ¶ 29.

20. Rhabdomyolysis is a disintegration of muscle caused by muscle injury or exertion and is associated with excretion of certain products into the urine. *Dorland's Illustrated Medical Dictionary* 1354 (25th ed. 1974); *see also* Letter of Bruce J. Rounsaville, M.D. to Attorney Jeffrey Drewniany (dated June 29, 1988) (submitted in affidavit form as Exhibit A to plaintiff's Motion to Supplement Memorandum in Opposition to Defendants' Motion for Summary Judgment and

Statement of Material Facts in Dispute (filed Oct. 13, 1988)) ("Rounsaville Affidavit") (rhabdomyolysis is "a condition in which breakdown products from injured muscle cause damage to the kidneys").

21. *See* Memorandum in Support of Defendants' Motion for Summary Judgment (filed Apr. 27, 1988) Attachment A (Hospital of St. Raphael "Emergency Medical Registration" and "Progress Notes"); Defendants' Affidavit, Exhibit H (St. Raphael's Hospital "Discharge Summary"); *see also* Complaint (filed Aug. 22, 1986) at ¶ 9; Defendants' Answer (filed Dec. 1, 1986) at ¶ 8.

22. Defendants' Affidavit ¶ 31; *id.* at Exhibit H (hospital discharge record).

*Immunity*

■ Defendants urge that they are entitled to "good faith immunity" under the doctrine of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). However, defendants have presented no argument that the violation alleged in this action was not a violation of constitutional rights that were "clearly established" at the relevant time, *see Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738; *cf. Hawkins v. Steingut,* 829 F.2d 317 (2d Cir.1987) (summary judgment should be granted where plaintiff had no clearly established constitutional right and defendants therefore had qualified immunity from plaintiff's claim for damages under 42 U.S.C. § 1983). *See* Memorandum in Support of Defendants' Motion for Summary Judgment (filed Apr. 27, 1988). There is no question that the Eighth Amendment right to adequate medical treatment was "clearly established" by the time of plaintiff's incarceration in 1985. *See Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).[23] Accordingly, the defendants are not entitled to invoke the doctrine of qualified immunity, and summary judgment is not appropriate on that ground. *See Miranda v. Munoz,* 770 F.2d 255, 259 n. 2 (1st Cir.1985).

*Personal Involvement*

■ Defendants argue that the two wardens, Thomas Warren and William Tuthill,[24] lack the personal involvement necessary for liability in this civil rights action. Personal involvement in the alleged constitutional deprivation is a prerequisite to an award of damages under 42 U.S.C. § 1983. *See Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987). A defendant may be "personally involved" by having participated directly in the infraction, and a supervisory official may be liable if he learned of the violation and failed to remedy the wrong, if he created or permitted the policy or custom under which the unconstitutional practices occurred, or if he was grossly negligent in

managing subordinates who caused the violation. *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986).

■ The complaint contains no allegation of specific conduct involving the plaintiff by either warden, and so the record must be examined for any facts arguably supporting an inference of personal involvement by either defendant. The record indicates that defendant Warren's only involvement in this case was to order plaintiff's medical transfer to the infirmary at New Haven Correctional Center at 1:00 a.m. on June 21, 1985.[25] Warren's only action was his decision to move Liscio to another, nearby correctional facility to obtain a medical evaluation, thereby removing the matter from Warren's supervision and control; it is not alleged that the transfer to the infirmary was a violation of any sort. Plaintiff thus has failed to raise a genuine issue of material fact regarding whether defendant Warren was personally involved in any alleged violation of plaintiff's constitutional rights, and summary judgment as to defendant Warren is appropriate.

■ As to defendant Tuthill, the record arguably permits an inference of greater personal involvement than for defendant Warren. On June 21, 1985, plaintiff was transferred to the infirmary at the New Haven Correctional Center, where Tuthill was the warden. Plaintiff was held in the infirmary in that facility for more than three days, during which time plaintiff continued to suffer hallucinations and to require restraint. The record indicates that on June 23, 1985, Tuthill personally was consulted regarding plaintiff's situation, and Tuthill authorized use of a piece of cotton sheet as a passive restraint for plaintiff's sore arm. If all inferences are drawn in the light most favorable to plaintiff, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513, the record in this matter does present a genuine issue of material fact as to Tuthill's

---

**23.** The parallel due process right of pretrial detainees was equally well established. *See infra* text accompanying note 25.

**24.** *See supra* note 1.

**25.** Defendants' Affidavit ¶ 17; *id.* at Exhibit B (Union Avenue Detention Center incident report).

personal involvement in this matter: Tuthill at least was alerted that the plaintiff was delirious and had been pulling at his restraints for a length of time sufficient to cause injury. Accordingly, summary judgment on the ground of lack of personal involvement is not appropriate as to defendant Tuthill.

### Deliberate Indifference

Defendants urge that plaintiff has made no showing of a genuine issue of material fact on the question of whether the defendants displayed deliberate indifference to the plaintiff's serious medical needs, the showing required to demonstrate a violation of the Eighth Amendment under *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 291–292, 50 L.Ed.2d 251 (1976).

It is noteworthy that this case involves medical care for a pretrial detainee rather than a convicted prisoner. Since the Eighth Amendment does not apply prior to conviction and sentence, *see Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir.) (Friendly, J.) (Eighth Amendment not applicable to pretrial detainees), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *see also Ingraham v. Wright*, 430 U.S. 651, 664–71 & n. 40, 97 S.Ct. 1401, 1408–1412, & n. 40, 51 L.Ed.2d 711 (1977) (Eighth Amendment applicable only to criminal law system and only after adjudication of guilt); *id.* at 669 (citing *Johnson v. Glick*), the proper analysis of plaintiff's claims in this case is under the due process clause of the Fourteenth Amendment. *See Lareau v. Manson*, 651 F.2d 96, 102 (2d Cir.1981) (noting that constitutional standard for substantive rights of pretrial detainees in prison is Fourteenth Amendment due process); *Rhem v. Malcolm*, 507 F.2d 333, 337 (2d Cir.1974) (pretrial detainee is entitled to

protection from cruel and unusual punishment as matter of due process and, where relevant, equal protection); *see also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir.1979); *cf. Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (applying Fifth Amendment due process clause to claims of pretrial detainees in federal facility).[26] Nonetheless, it appears that, in this Circuit, the same standards apply under due process protections as under the Eighth Amendment protection from cruel and unusual punishment. *See Johnson v. Glick*, 481 F.2d at 1032 ("[I]t would be absurd to hold that a pre-trial detainee has less constitutional protection ... than one who has been convicted."); *see also Arroyo v. Schaefer*, 548 F.2d 47, 50 (2d Cir.1977) (in actions under 42 U.S.C. § 1983 by detainees, due process requires no more than Eighth Amendment). Accordingly, the Eighth Amendment standard is applicable in this case.[27]

To establish an unconstitutional deprivation of medical care, a prisoner must demonstrate acts or omissions sufficiently harmful to amount to "deliberate indifference" to "serious medical needs." *Estelle v. Gamble*, 429 U.S. at 106, 97 S.Ct. at 292; *Hathaway v. Coughlin*, 841 F.2d 48, 50 (2d Cir.1988); *see also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d at 762 (test under *Estelle* is two-pronged, requiring that prisoner's medical needs be serious and that defendants display deliberate indifference to those needs); *Harding v. Kuhlmann*, 588 F.Supp. 1315, 1316 (S.D.N.Y.1984) (Weinfeld, J.) (same), *aff'd mem.*, 762 F.2d 990 (2d Cir.1985).

The record of this case does present a genuine issue of material fact as to whether plaintiff's medical needs were

---

**26.** In this case, plaintiff consented to the granting of summary judgment for the defendants on plaintiff's claims under the Fifth Amendment and the equal protection clause of the Fourteenth Amendment. *See* Order (entered Oct. 17, 1988). However, plaintiff's claims under the due process clause of the Fourteenth Amendment were not dismissed and are the relevant claims presented.

**27.** At oral argument on October 14, 1988, counsel for plaintiff suggested that the Eighth Amendment "deliberate indifference" standard may not apply to pretrial detainees, and he requested the opportunity for additional briefing on the question. The court granted the application for additional briefing, but counsel for the plaintiff submitted nothing, *see supra* note 3, and presumably does not contest application of the Eighth Amendment standard here.

"serious." Dr. Lebson's affidavit indicates that his assessment of plaintiff's condition before plaintiff was transferred to the hospital on June 24, 1985 was that "a life threatening situation was not presented." [28] However, there is no dispute that the plaintiff suffered a prolonged period of delirium accompanied by self-injurious thrashing and that plaintiff ultimately required hospitalization for treatment of dehydration. In addition, the assessment of plaintiff's expert is that plaintiff indeed was in a "life endangering condition" by the time he was transferred to the hospital.[29] Plaintiff's medical needs thus arguably were "serious." *See Pace v. Fauver*, 479 F.Supp. 456, 458 (D.N.J.1979) ("A 'serious' medical need may be fairly regarded as one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the need for a doctor's attention."), *aff'd mem.*, 649 F.2d 860 (3d Cir.1981); *see also Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988); *cf. Estelle v. Gamble*, 429 U.S. at 103, 97 S.Ct. at 290 (suggesting that unnecessary and continuing pain resulting from denial of medical care presents "serious" medical need). The remaining question, therefore, is whether plaintiff has presented a genuine issue of material fact as to whether defendants Tuthill and Lebson acted with "deliberate indifference" to plaintiff's medical needs.

 A plaintiff may demonstrate the deliberate indifference of prison officials by showing that they intentionally interfered with prescribed treatment or intentionally denied access to medical care. *Estelle v. Gamble*, 429 U.S. at 104–05, 97 S.Ct. at 291; *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir.1977). Plaintiff has presented no evidence—and, indeed, no claim—that Warden Tuthill or his staff interfered in any way with the treatment prescribed by Dr. Lebson.[30] Further, nothing in the record suggests that Tuthill acted in any way to delay or deny plaintiff's access to medical care; in fact, it is not disputed that plaintiff remained under observation in the infirmary at the New Haven Correctional Center for the period relevant to this complaint and that he was transported to St. Raphael's Hospital within an hour of Dr. Lebson's examination of him on June 24,

28. Defendants' Affidavit ¶ 29.

29. Rounsaville Affidavit.

30. Plaintiff suggests that defendants' failure to check the plaintiff in the infirmary every 15 minutes represents a deliberate indifference to plaintiff's medical needs. *See* Plaintiff's Statement of Material Facts in Dispute (filed Oct. 11, 1988) ¶ 3; *see also* Rounsaville Affidavit ("[C]hecks on the patient were ordered every 15 minutes although there is no evidence that these were performed with the ordered frequency."); *cf.* Defendants' Affidavit, Exhibit D (New Haven Correctional Center Medical Incident Report regarding plaintiff's transfer to infirmary noting that "treatment administered" included two-point restraints and 15–minute checks). While the question of whether plaintiff was checked in the infirmary every 15 minutes does appear to be in dispute, that factual dispute is not "material," since the frequency of those checks was not a specific prescription from Dr. Lebson, *see supra* text at note 12, and the record indicates that the plaintiff indeed was checked periodically, *see* Defendants' Affidavit, Exhibit E (log entries regarding plaintiff); Rounsaville Affidavit (indicating that "[n]otes on the patient's condition were made around every 3–4 hours").

A further factual issue is whether any withdrawal medications were administered to plaintiff at the Union Avenue Detention Center before he was transferred to New Haven Correctional Center. *See supra* note 6 and accompanying text. Plaintiff's expert, Dr. Bruce J. Rounsaville, indicates in his sworn statement that from his review of the record it appears that "no attempt to treat or prevent a withdrawal syndrome was made" from the time plaintiff was admitted to Union Avenue Detention Center to the time he became delirious three days later. *See* Rounsaville Affidavit. Although a knowing failure to administer withdrawal medications arguably could indicate deliberate indifference to plaintiff's medical needs, that claim is not and cannot be presented against any defendant in this action. Dr. Lebson and Warden Tuthill had no involvement with plaintiff before his transfer to the New Haven Correctional Center, and Warden Warren lacked sufficient personal involvement in plaintiff's case to be liable under 42 U.S.C. § 1983, *see supra* text accompanying note 25. The factual dispute regarding administration of withdrawal medications at Union Avenue thus is not "material" to the question of deliberate indifference on the part of defendants in this case.

1985.[31] There is no suggestion in this record, much less anything like a showing, that Tuthill disregarded plaintiff's medical needs as punishment for disciplinary violations or for other invalid reasons. *Cf. Archer v. Dutcher*, 733 F.2d 14, 17 (2d Cir.1984). Finally, Tuthill cannot be found to have been deliberately indifferent to plaintiff's medical needs for failing to intervene in Dr. Lebson's course of treatment for the plaintiff; as a prison administrator, Warden Tuthill justifiably may defer to the medical expert regarding treatment of inmates/patients, *see McEachern v. Civiletti*, 502 F.Supp. 532, 534 (N.D.Ill.1980) (reliance upon opinion of medical staff as to proper course of treatment for inmate insulates prison administrator from liability under Eighth Amendment), and the record presents no facts sufficient to support any inference that Tuthill was reckless in supervising the subordinates who were responsible for plaintiff's care, *cf. Wright v. McMann*, 460 F.2d 126, 134–35 (2d Cir.) (warden has ultimate responsibility for conditions of segregation cells and is liable where he had actual knowledge of segregation cell conditions), *cert. denied*, 409 U.S. 885, 93 S.Ct. 115, 34 L.Ed.2d 141 (1972). Plaintiff has failed to raise a genuine issue of material fact as to whether Tuthill displayed deliberate indifference to plaintiff's medical needs, and on this record defendant Tuthill is entitled to summary judgment as a matter of law. *See Williams v. Coughlin*, 650 F.Supp. 955 (S.D.N.Y.1987).

█ As to Dr. Lebson, it is clear that a physician treating an inmate may be liable under 42 U.S.C. § 1983 for deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. at 104, 97 S.Ct. at 291. The conduct alleged must constitute a wanton infliction of unnecessary pain, *id.* at 105, 97 S.Ct. at 291, and must be "repugnant to the conscience of mankind," *id.* at 106, 97 S.Ct. at 292.

█ The report of plaintiff's expert, Dr. Rounsaville, raises the suggestion that Dr. Lebson misdiagnosed plaintiff's withdrawal as being exclusively from heroin when plaintiff actually also was undergoing withdrawal from alcohol.[32] Allegations of negligence in diagnosis or treatment alone, without facts supporting a charge of deliberate indifference, cannot support a claim under § 1983. *Estelle v. Gamble*, 429 U.S. at 106, 97 S.Ct. at 292. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") Likewise, the questions raised by Dr. Rounsaville regarding Dr. Lebson's failure to treat for alcohol withdrawal present, at most, questions of negligence and not of deliberate indifference; that the plaintiff's case was "severely mismanaged"[33] arguably may entitle the plaintiff to a tort remedy, but it does not present a constitutional claim.

Even construed in the light most favorable to the plaintiff, this record does not present facts sufficient for an inference of deliberate indifference. Dr. Rounsaville indicates that plaintiff's condition between June 21 and June 24 presented an evident and worsening medical emergency and that during those three days the plaintiff was not examined by a physician. Plaintiff suggests that failure to examine him over a weekend[34] evidences deliberate or wanton delay rather than mere negligence in diagnosis. However, the record indicates that plaintiff was in the infirmary for that three-day period and was under observation by medical personnel.[35] *Cf. Hathaway*

---

**31.** Defendants' Affidavit, Exhibit E (log entries for June 24, 1985).

**32.** Rounsaville Affidavit.

**33.** *Id.*

**34.** The record indicates that June 22 and 23, 1985 were a Saturday and a Sunday. *See* Defendants' Affidavit ¶ 15.

**35.** Defendants' Affidavit, Exhibit F (record entries by Medic Thomas Sellas and Nurse David

Carr, R.N. on June 22 and 23, 1985). In addition, a log entry for 12:05 p.m. on June 23, 1985, states, "Dr. Rosner called cont'd restraints—w/d meds X 24 hrs—follow up by Dr. Lebson 6/24." Defendants' Affidavit, Exhibit E; *see also id.* ¶ 28. There is no indication that the unknown Dr. Rosner examined the plaintiff on June 23, 1985, but it does appear that the infirmary staff consulted with Dr. Rosner regarding the plaintiff's condition.

*v. Coughlin,* 841 F.2d 48 (2d Cir.1988) (delay of over two years in arranging surgery to correct broken pins in hip could amount to deliberate indifference to serious medical needs). In addition, this record does not present any indication of an evil intent or ill motive of Dr. Lebson, *cf. Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987) (plaintiff may have valid claim for relief where medical treatment refused for misconduct unrelated to medical condition or treatment); *Archer v. Dutcher,* 733 F.2d 14 (2d Cir. 1984) (summary judgment inappropriate where plaintiff raises issue of material fact regarding possibility that defendants delayed emergency medical aid to cause suffering for obstreperous inmate), and likewise does not present facts that could support an inference of wanton or callous indifference to plaintiff's needs that would rise to the level of an Eighth Amendment violation, *cf. Miranda v. Munoz,* 770 F.2d 255, 259 (1st Cir.1985) (where defendants, including physician, ignored warning that medical treatment for epileptic detainee was inadequate and where failure to provide treatment resulted in detainee's death, matter should go to jury); *Williams v. Vincent,* 508 F.2d 541, 544 (2d Cir.1974) (colorable claim of deliberate indifference presented where doctors chose treatment of discarding prisoner's ear and stitching stump rather than attempting to save the severed portion). Accordingly, summary judgment is appropriate as to defendant Lebson. *See Williams v. Coughlin,* 650 F.Supp. 955 (S.D.N.Y.1987); *Harding v. Kuhlmann,* 588 F.Supp. 1315, 1316 (S.D.N.Y.1984), *aff'd mem.,* 762 F.2d 990 (2d Cir. 1985); *Tomarkin v. Ward,* 534 F.Supp. 1224, 1230–31 (S.D.N.Y.1982).

*Pendent State Claims*

■ Defendants also seek summary judgment on plaintiff's state common law tort claims. Defendants urge that the court should decline to exercise discretionary jurisdiction over those pendent state law claims. Defendants also argue that a tort action against the three defendants is barred by the Connecticut statute providing immunity from personal liability to state officials, Conn.Gen.Stat. § 4–165.[36]

Federal courts may exercise pendent jurisdiction over state claims when the state and federal claims derive from a common nucleus of operative fact and are such that the plaintiff ordinarily would be expected to try them all in one judicial proceeding. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, pendent jurisdiction is a doctrine of discretion, not of right, and upon consideration of judicial economy, convenience, and fairness to litigants a federal court may decline to exercise jurisdiction over state claims. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. Further, where federal claims are dismissed before trial, the state claims should be dismissed as well. *Id.*

Since summary judgment on all remaining federal claims is appropriate as to all three defendants in this case, the state claims should be dismissed. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139; *see also Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir.1988) ("When all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court ordinarily should dismiss the state claims."). In addition, an exercise of pendent jurisdiction in this case would require examination of state tort claims regarding correctional and medical conduct as well as federal liability standards and Eighth Amendment jurisprudence.[37] Further, a federal court should decline to exercise pendent jurisdiction where needless decisions of state law questions can be avoided thereby, *see Gibbs,* 383

---

**36.** Conn.Gen.Stat. § 4–165 provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." Conn.Gen.Stat. § 4–141 defines "state officers and employees" to include any physicians employed by any state agency.

In addition, Conn.Gen.Stat. § 4–165 requires that "[a]ny person having a complaint for such

damage or injury shall present it as a claim against the state" under the provisions of Conn. Gen.Stat. § 4–141 *et seq.* Defendants urge that plaintiff's state law claims against them are barred by plaintiff's failure to pursue an administrative remedy as required by law.

**37.** There is, of course, no general policy or *per se* rule of dismissing pendent state claims in civil rights cases. *See Perez v. Ortiz,* 849 F.2d 793, 798 (2d Cir.1988). However, state law

U.S. at 726, 86 S.Ct. at 1139, and it would appear that adjudication of the state law claims here would require a determination by this court that the claim against the state employees is not barred by plaintiff's apparent failure to pursue an administrative remedy as required by Conn.Gen.Stat. § 4–165 and also that the conduct of defendants arguably was "wanton, reckless and malicious" as the Connecticut courts would interpret those terms. Thus, even if there were a remaining basis for federal jurisdiction in this case, the exercise of pendent jurisdiction would unduly complicate this lawsuit. Accordingly, all state law claims in this action shall be dismissed.

### CONCLUSION

On the basis of the full record of this case and for the reasons stated above, the defendants' Motion for Summary Judgment is GRANTED as to all federal claims against all defendants. The plaintiff's pendent state tort claims are dismissed.

It is so ordered.

claims appended to civil rights actions may complicate and unnecessarily burden the already complex federal litigation of claims under 42 U.S.C. § 1983. *See Douglas v. Town of Hartford*, 542 F.Supp. 1267, 1271 (D.Conn.1982) (Clarie, C.J.); *see also Esposito v. Buonome*, 647 F.Supp. 580 (D.Conn.1986) (Blumenfeld, J.) (application of different liability standards to federal and state claims could confuse jury and compromise federal and state interests).