Dennis LISCIO, Plaintiff–Appellant,

v.

Thomas WARREN, William Tuthill and Robert E. Lebson, M.D., Individually and in their official capacities as Officials of the Connecticut Department of Correction, Defendants–Appellees.

No. 716, Docket 89–7799.

United States Court of Appeals, Second Circuit.

Argued Jan. 19, 1990.

Decided April 12, 1990.

John R. Williams (Williams and Wise, New Haven, Conn., Jeffrey J. Drewniany, of counsel), for plaintiff-appellant.

Robert F. Vacchelli, Asst. Atty. Gen. (Clarine Nardi Riddle, Atty. Gen., Hartford, Conn., of counsel), for defendants-appellees.

Before LUMBARD, FEINBERG, and PRATT, Circuit Judges.

LUMBARD, Circuit Judge:

Dennis Liscio appeals from a summary judgment of the District Court for the District of Connecticut (Cabranes, *J.*), dismissing his complaint. *Liscio v. Warren*, 718 F.Supp. 1074 (D.Conn.1989). The complaint alleged that defendant Dr. Robert E. Lebson and others, in violation of 42 U.S.C. § 1983 (1982), were deliberately indifferent to Liscio's serious medical needs while Liscio was undergoing drug and alcohol withdrawal as a pretrial detainee at the New Haven Correctional Center, resulting in serious physical injury. At the time, Dr. Lebson was the contract physician in charge of the medical unit at the Center. Although the district court dismissed all claims as to all defendants, Liscio appeals only the dismissal of the claims against Dr. Lebson. Because we think there was a factual dispute as to whether Dr. Lebson's conduct constituted deliberate indifference, and not mere negligence, we reverse.

The facts alleged in the complaint and in affidavits submitted in support of and in response to the motion for summary judgment are as follows:

On June 18, 1985, Liscio was booked into the Union Avenue Detention Center in New Haven. During intake screening he told the booking officer that he was undergoing heroin withdrawal but mentioned no other substance abuse. The officer noted on the intake form that Liscio was placed on drug withdrawal medication though, as the district court found, there is no evidence that such was then administered. *Id.* at 1077 n. 6. On Friday, June 21, at 12:05 a.m., while at the Union Avenue facility, Liscio began behaving in a bizarre manner and appeared to be hallucinating. About 1:00 a.m., the warden transferred him to the infirmary at the New Haven Correctional Center, where the examining nurse noted that Liscio was a "poor historian" of his condition, that he denied any drug abuse other than his heroin addiction, and that he had "trac marks" on both arms. He was placed in "two-point restraints" (i.e., handcuffs) and checked every fifteen minutes. A third restraint was added at 3:10 a.m. because of "aggressive behavior." The medical records indicate he was repeatedly yelling and talking to himself. At 10:05 a.m., a fourth restraint was added, and it was noted on Liscio's chart that he was having "DT's" (delirium tremens), the clinical term for psychotic or bizarre behavior associated with alcohol withdrawal.

At 10:35 a.m., Dr. Lebson examined Liscio, noted his agitation, and ordered a withdrawal regimen and psychiatric evaluation. The psychiatrist, Dr. August, refusing to evaluate Liscio because his problem was medical, referred the case back to Dr. Lebson, who did not examine Liscio again until three days later, on Monday, June 24.

Meanwhile, Liscio's agitation and yelling continued. He refused lunch and dinner on June 21. The next day, Saturday, he refused breakfast, though he later drank a high protein mixture and eight ounces of water. His left arm swelled from pulling on the restraint and was placed in a cloth passive restraint. Still hallucinating, he was kept isolated and in four-point restraints until June 24, when Dr. Lebson transferred him to St. Raphael's Hospital in New Haven for "assessment of hydration & fluid if necessary." Upon arrival, Liscio was put in an intensive care unit for emergency treatment of renal failure, dehydration, and delirium caused by withdrawal from alcohol abuse as well as from heroin addiction. Later evaluation revealed that Liscio was an alcoholic who drank approximately one case of beer per day. It was also determined that Liscio was suffering from rhabdomyolysis, damage to kidneys caused by products released from injured muscle; he sustained such muscle injury from pulling at his restraints during the previous three days. On June 27, he was discharged to the New Haven Correctional Center, having sustained no permanent damage.

In response to Dr. Lebson's motion for summary judgment, Liscio submitted, *inter alia*, an affidavit from Dr. Bruce J. Rounsaville, Associate Professor of Psychiatry at Yale Medical School and Director of Research for the Substance Abuse Treatment Unit of the Connecticut Mental Health Center. According to Dr. Rounsa-

ville, it is crucial that medical personnel at correctional facilities distinguish between heroin withdrawal, which is uncomfortable but not life-threatening, and alcohol withdrawal, which has a "serious" mortality rate. Indeed, before modern alcohol withdrawal treatment, the mortality rate for delirium tremens was 10–20%. The basis for distinguishing the two withdrawals, Dr. Rounsaville stated, is that "psychosis bizarre behavior or delirium" is commonly associated with alcohol withdrawal but not with simple heroin withdrawal. Liscio was obviously suffering from delirium, which, when of unknown origin, is a medical emergency that obligates the treating physician to inquire into its cause. Instead of pursuing this course, Dr. Lebson, according to the affidavit, erroneously presumed the cause of Liscio's condition to be heroin withdrawal.

Dr. Rounsaville opined that Dr. Lebson had "severely mismanaged" Liscio's case, causing "unnecessary injury and suffering, and placing him in a life-threatening condition." This mismanagement, he continued, was especially unacceptable because it occurred in a correctional facility, where alcohol and drug withdrawal cases are common.

The affidavit stated, however, that the most alarming lapse was neither the initial misdiagnosis of alcohol withdrawal as heroin withdrawal nor the failure to respond immediately to Liscio's delirium. Rather, it was that Liscio.

> was allowed to remain delirious and to have his mental and physical condition deteriorate for 3 full additional days before he was given more adequate medical attention in a hospital setting.... In fact, during the three day period between the morning of June 21 and June 24, Mr. Liscio was not examined by a physician despite his worsening mental and physical condition. This three day period was a time when the patient was in a state that must be seen as a medical emergency, given the substantial mortality rate of inadequately treated D.T.'s.

The inadequacy of treatment, he stated, was compounded by the fact that Liscio's incarceration meant he could not choose his medical care. Dr. Rounsaville concluded

that the medical personnel at the Center "should have been familiar with the alcohol withdrawal syndrome and should have made the diagnosis. More seriously, they made only minimal responses and failed to evaluate the cause of this man's deteriorating condition during a prolonged period. Thus, he was placed at sustained risk for much more serious injury or death."

Judge Cabranes found that the evidence suggested nothing more than simple negligence, not the deliberate indifference to serious medical needs that, under *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), constitutes a violation of the due process clause of the fourteenth amendment and hence § 1983. 718 F.Supp. at 1082–83. The Judge therefore dismissed the federal claims and then dismissed all pendent state tort claims as well. *Id.* at 1083–84.

■ Resolving ambiguities and drawing reasonable inferences against the moving party, as we must on summary judgment, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), we find that there is a factual dispute as to whether Dr. Lebson's conduct constituted deliberate indifference to Liscio's serious medical needs. Summary judgment was therefore inappropriate. *See Hathaway v. Coughlin*, 841 F.2d 48 (2d Cir.1988) (to decide question of deliberate indifference is to make an impermissible factual finding at summary judgment stage); *Archer v. Dutcher*, 733 F.2d 14, 16 (2d Cir.1984) (factual dispute existed as to deliberate indifference although inmate had received "comprehensive, if not doting, health care").

■ Since the medical records indicated that Liscio was a "poor historian" of his own condition, Dr. Lebson was on notice that Liscio might be suffering from ailments other than withdrawal from the heroin addiction Liscio mentioned when first booked. Dr. Lebson also was on notice that the particular ailment might be alcohol withdrawal because Liscio's symptoms—delirium and bizarre behavior—are commonly associated with alcohol withdrawal

and not with simple heroin withdrawal. In light of Dr. Rounsaville's statements that alcohol withdrawal cases frequently appear in the correctional facility setting and that the associated mortality rate makes them much more serious than heroin withdrawal cases, and in view of the notation on Liscio's chart that he was experiencing "DT's," a jury could find that Dr. Lebson's failure to diagnose Liscio's alcohol withdrawal constituted deliberate indifference.

■ Moreover, a jury could conclude that Dr. Lebson's failure to examine Liscio for three days, including a weekend, shows deliberate indifference. The evidence indicates that Liscio's alcohol withdrawal caused his health to deteriorate very rapidly. Yet Dr. Lebson did not even visit him during the weekend.

Finally, Dr. Rounsaville in his affidavit stated that Dr. Lebson had "severely mismanaged" Liscio's case. In light of all the evidence, a jury could determine that Dr. Lebson's conduct was more than simple negligence and conclude that it constituted deliberate indifference.

■ *Estelle* is not to the contrary. Since the inmate in that case had a back condition that was neither life-threatening nor fast-degenerating, his eleven visits with physicians over a three-month period was evidence that the medical care he received could not constitute deliberate indifference. By contrast, Liscio's condition was both life-threatening and fast-degenerating. Thus, Dr. Lebson's failure to examine him over a three-day period could be found to violate the standard established in *Estelle.*

■ Since the district court dismissed Liscio's pendent state tort claims largely because it dismissed Liscio's federal claims, we also order the reinstatement of whatever pendent state claims Liscio brought against Dr. Lebson. The federal and state claims arise "from a common nucleus of operative fact" and are such that Liscio "would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Nor would the state claims "predominate," *id.* at 726, 86 S.Ct. at 1139, so long as the federal claim remains in the case. In addi-

tion, the risk of jury confusion can be reduced by "judicious use of special verdicts and carefully drawn instructions." *Miller v. Lovett,* 879 F.2d 1066, 1073 (2d Cir.1989) (requiring district court to exercise pendent jurisdiction over state claims for negligence and assault and battery in suit under § 1983 against police officers for use of excessive force).

The mere application of state law to the facts of this case would not entail "needless decisions of state law," *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, any more than in the ordinary case of pendent jurisdiction. Moreover, the particular state law questions here—whether Liscio's "apparent failure to pursue an administrative remedy as required by Conn.Gen.Stat. § 4–165," 718 F.Supp. at 1084, should bar his state claims, and whether Liscio can prove that Dr. Lebson's conduct was "wanton, reckless and malicious," *id.*—do not appear so novel and difficult as to require separate litigation in state court.

Reversed and remanded for further proceedings.