James L. WILLIAMS, Plaintiff,

v.

DIRECTOR OF HEALTH SERVICES, DEPARTMENT OF CORRECTIONAL SERVICES, Stephen Dalsheim, E. S. Le-Fevre, and C. Scully, Defendants.

No. 81 Civ. 4338(MEL).

United States District Court,
S. D. New York.

July 7, 1982.

James L. Williams, Stormville, pro se.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for defendants; Joyce Andren, Asst. Atty. Gen., New York City, of counsel.

LASKER, District Judge.

James L. Williams is a prisoner currently incarcerated at Green Haven Correctional Facility ("Green Haven"). He alleges that he is suffering from a condition diagnosed as colitis, and that this condition, if improperly treated, can cause serious injury and even death. He claims that the medical treatment which he received while in New York correctional facilities was so inadequate as to violate the Eighth Amendment. Defendants, the superintendents of the three correctional facilities in which Williams has been held since November, 1979, and the Director of Health Services of the Department of Correctional Services, move to dismiss the complaint on the grounds that it fails to state a claim on which relief can be granted, or in the alternative, for summary judgment.

According to Williams' complaint and his affidavit in opposition to the motion, the

facts are as follows: At the time Williams entered the Ossining Correctional Facility ("Ossining"), he was already suffering from and being treated for internal bleeding. While he had been confined at Rikers Island, medical personnel had ordered that certain tests be performed; however, the officials at Ossining failed to follow up on those orders. Williams complained of bleeding, tests were run, and Williams was scheduled for a "sigmo biopsy." However, immediately before Williams was to be admitted to the hospital for this procedure, he was transferred to Clinton Correctional Facility ("Clinton").

No one at Ossining sent instructions to Clinton to follow up on the scheduled procedure or to provide Williams with treatment. Williams in effect had to start from scratch with the medical personnel at Clinton, complaining to the medical department, and undergoing the same tests already performed at Ossining. He requested a special diet for his medical condition, but was told that the facility did not provide special diets for his problem. At one point, he was taken to the hospital on a stretcher and discharged six days later without having received any treatment. His internal bleeding having become quite serious, both he and his family wrote to the Director of Health Services for the Department of Corrections, and he wrote to Superintendent LeFevre. LeFevre responded that he had been advised that Williams was scheduled to see a neurologist at the in-house clinic. (Letter of E. S. LeFevre, Exhibit 1 to Affidavit of Joyce Andren). Williams never saw the Clinton-in-house neurologist; instead he was transferred to Green Haven.

At Green Haven, Williams put in a number of emergency sick call forms, and was told that if he continued to do so, he would be subjected to disciplinary action. For nearly two months he was not treated, until he had to be rushed to the hospital because of extensive hemorrhaging. At the hospital he was scheduled for a "colonsepe," but he was transferred back to the prison before the test could be given, although he was still bleeding. He then wrote to Superintendent Scully concerning his medical care.

Scully referred the letter to the Health Services Administrator, who wrote to Williams to assure him that "The Health Unit at Green Haven Correctional Facility is aware of your problem." (Memorandum of James Williams from E. Michael Kalonick, Exhibit VIII to Affidavit to Joyce Andren). As of the time the complaint was filed, July, 1981, Williams had not been given a "brain scan" which had been ordered in January, 1981, although in his affidavit in opposition to the instant motion he states that he did receive the scan in December, 1981 but "only . . . because defendants wanted to use it as a defense."

The defendants contend: (1) the facts alleged by Williams do not constitute a constitutional violation; (2) the defendants may not be held liable because they are not alleged to have been personally involved in the alleged constitutional deprivations, and *respondeat superior* liability is inapplicable under § 1983; (3) the defendants are entitled to a qualified immunity because they acted in good faith; and (4) defendant Department of Corrections is not amenable to a suit for damages under the Eleventh Amendment.

### 1. *The Constitutional Claim*

In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1977), the Supreme Court ruled that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' . . . proscribed by the Eighth Amendment," *id.* at 104, 97 S.Ct. at 291, *quoting Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976), and that an Eighth Amendment claim was stated where, for example, prison officials were charged with "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* 429 U.S. at 105, 97 S.Ct. at 291. By contrast, the Court explained that a claim would not be stated where the complaint alleged physician negligence only: "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106, 97 S.Ct. at 292.

Williams is not alleging mere medical malpractice: he has not named any of his doctors as defendants, and he makes no complaints about the quality of his medical care, *per se*. Rather, he contends that the state prison officials deliberately and callously ignored his requests for treatment and, in fact, intentionally impeded his access to medical care by, *inter alia*, transferring him from one facility to another just at the time that he was about to undergo medical treatment; failing to advise the transferee prison of his medical needs; and threatening him with disciplinary sanctions for requesting medical assistance at a time when he was suffering from what had been diagnosed as a serious medical problem.

In two Second Circuit cases, both of which were cited with approval by the Supreme Court in *Estelle,* facts similar to these have been determined to state a valid claim. In *Martinez v. Mancusi,* 443 F.2d 921 (2d Cir. 1970), the plaintiff-prisoner alleged that he had been prematurely returned to prison after surgery, in violation of the orders of his surgeon, causing him grievous injury. It was held that the warden's ordering the plaintiff to be returned to prison only two weeks after a very serious operation "without checking with the operating surgeons and without obtaining a hospital discharge" constituted "deliberate indifference to [plaintiff's] condition." In *Williams v. Vincent,* 508 F.2d 541 (2d Cir. 1974), an Eighth Amendment claim was held to be stated by a prisoner where: (1) "deliberate indifference caused an easier and less efficacious treatment to be consciously chosen" (*id.* at 544); and (2) the prisoner "needed and requested medication . . . but such requests were callously refused or ignored." (*Id.*)

Defendants' attempt to distinguish *Martinez* and *Williams v. Vincent* by listing the number of examinations and tests that Williams has undergone, the number of doctors he has seen at the various prisons, and the amount of medication he has received. Williams' response is compelling: naturally he has seen a number of doctors and undergone numerous tests—defendants have transferred him from one institution to another without forwarding the necessary records and instructions, so that the new doctors have had to start from scratch in diagnosing him each time. Moreover, it was as a result of the numerous transfers and the callous indifference with which he alleges he was treated at each facility that his condition deteriorated to the point that extensive emergency treatment was necessary.

For the purposes of this motion to dismiss, Williams' allegations must be taken as true. Moreover, with respect to the motion for summary judgment, the quality of medical care provided to Williams is a question of fact which cannot be resolved on the present record. Whether the medical care provided was constitutionally deficient cannot be determined by looking solely at the care that Williams received: adequacy of care is a relative proposition which depends on a variety of factors including the condition of the patient. Moreover, what defendants did not do may be as important as what they did.

We conclude that under *Martinez v. Mancusi* and *Williams v. Vincent,* Williams' complaint states a cause of action under the Eighth Amendment for "deliberate indifference to serious medical needs," *Estelle v. Gamble,* 429 U.S. at 104, 97 S.Ct. at 291, and that the defendants are not entitled to summary judgment because factual issues remain as to whether the treatment accorded plaintiff negates his claim of deliberate indifference.

2. *The Defendants' Personal Responsibility*

Defendants correctly contend that "when monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the defendant is required." *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir. 1973) (Friendly, J.) However, the complaint meets this requirement because it alleges that defendants Dalsheim, LeFevre and Scully have "encouraged their staff[s] to impede and ag-

gravate medical treatment" (Complaint at 6) and that defendant Director of Health Services has issued policy directives and instituted practices designed to impede and aggravate prison medical care. (*Id.*) Moreover, LeFevre, Scully and the Director of Health Services had personal knowledge of Williams' condition: he wrote to each to complain of his treatment.

*Johnson v. Glick* does not require the plaintiff in a § 1983 action to show that the defendant was solely or even primarily responsible for the alleged injury: the requirement is a showing of "*some* personal responsibility." For example, *Johnson* approvingly cites *Martinez v. Mancusi, supra,* in which the plaintiff adequately alleged personal responsibility on the part of the warden because it was the warden who ordered plaintiff to be transferred prematurely to prison from the hospital after a serious operation. *Martinez, supra,* at 921 ("the warden cannot escape liability by claiming that . . . whatever was done was done by the guards. It is alleged that he ordered them to move appellant without obtaining a discharge, and they were following his orders.") Similarly, *Johnson* approved the finding of personal responsibility in *Wright v. McMann,* 460 F.2d 126 (2d Cir. 1972) in which "there had been a history of previous episodes requiring the warden to take therapeutic action." *Johnson, supra,* at 1034, *citing Wright, supra* at 134–135.

Defendants criticize the complaint on the grounds that it is "void of factual support" which would suggest that the defendants were personally involved in the alleged events. However, at this stage of litigation, it is reasonable for Williams to allege on information and belief that it was the defendants who established the policies and authorized the general practices and specific incidents referred to in the complaint. Such an allegation is sufficient under *Johnson v. Glick* to establish some personal liability. Moreover, the defendants, though

they are moving for summary judgment, do not submit affidavits denying participation in the acts alleged.[1]

### 3. *Qualified Immunity*

■ Defendants contend that they are entitled to a qualified immunity simply because, as they put it, "[P]laintiff was continuously given medical treatment and attention." (Brief for Defendants at 12). We assume this to mean that defendants believe that the medical care provided to Williams demonstrates their good faith.

As discussed above in connection with the constitutional issue, the question whether the medical care afforded plaintiff was adequate is a question of fact which depends largely on plaintiff's condition, and cannot be determined simply by counting the number of doctor visits and tests that he received. It follows that it cannot be determined from a reading of Williams' medical record whether defendants acted in good faith. Moreover, Williams has alleged that defendants intentionally impeded his access to medical care, and defendants have not submitted affidavits denying those allegations or asserting that they acted in good faith.

On the present record, a finding of good faith cannot be made.

### 4. *The Eleventh Amendment*

■ The Department of Corrections moves to be dismissed from the action under the Eleventh Amendment.

It does not appear from the complaint that Williams has named the Department as a defendant, and the records of the Court do not reveal that the Department was ever served. Accordingly, it appears that the Department is not a party to the case, and needs no further relief.

Defendants' motions to dismiss the complaint for failure to state a claim and for summary judgment are denied.

It is so ordered.

---

1. Defendants' contention that Williams has failed to allege personal involvement by the Director of Health Services because he "fails to state the name of the Director" (Affidavit of Joyce Andren, 7(m)) is insufficient. The affida-

vit submitted by the Acting Director of Health Services does not deny Williams' contention that he wrote to the Director of Health Services to complain of his medical treatment.