Nanette ARCHER, Appellant,

v.

Ben DUTCHER et al., Appellees.

No. 714, Docket 83–2309.

United States Court of Appeals, Second Circuit.

Argued Feb. 2, 1984.
Decided April 17, 1984.

Charles P. Kelly, New York City, for appellant.

Joan S. O'Brien, Mendes & Mount, New York City, for appellees.

Before OAKES and CARDAMONE, Circuit Judges, and BONSAL, District Judge.*

OAKES, Circuit Judge:

Appellant's civil rights case was dismissed by grant of summary judgment, thereby making the determinative question here whether there is a genuine issue of material fact. Fed.R.Civ.P. 56(c). The action involves alleged deliberate indifference to the medical needs of the then-pregnant prison inmate, which, appellant asserts, rises to an Eighth Amendment violation under *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Paying heed to the teaching of *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975), that a court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought ... with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute" (citations omitted), we must reverse the judgment of the United States District Court for the Southern District of New York, Henry F. Werker, Judge, and allow appellant to attempt to prove her charges.

Appellant Nanette Archer had been convicted of possession of stolen property in the third degree and sentenced to six months in prison. She was admitted to Dutchess County Jail (DCJ) on March 18, 1981, at which time she may well have been a heroin addict, was without doubt obese (5' 7", 240 pounds), and was also, as it developed, pregnant. Archer alleges that she was denied her Eighth Amendment rights by Dutchess County defendants-appellees[1] as a result of their alleged "deliberate indifference" to her safety and medical needs. According to Archer's brief, prison officials and staff demonstrated wanton disregard for her as "she lay in her prison cell, large with child and suffering torturous cramping and vaginal bleeding." She ultimately miscarried.

Following the submission by both sides of affidavits and Local Rule 3(g) statements, on August 24, 1983, Judge Werker granted defendants-appellees' motion for summary judgment. The judge first noted that the applicable test for a violation of a prisoner's medical rights, as set forth by the Supreme Court in *Estelle v. Gamble*, 429 U.S. at 104, 97 S.Ct. at 291 was that of "deliberate indifference to the serious medical needs," but also quoted *Estelle* that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106, 97 S.Ct. at 292. The judge then observed that Archer did not claim a total denial of medical care and that the "undisputed hospital records" showed that Archer was not denied treatment. According to Judge Werker, Archer's complaint really was about the "quality of the care" she received, and she was "thus seeking to substitute her own judgment for that of the prison's medical staff." Finding from the "uncontroverted evidence of an almost daily monitoring of [Archer's] condition by the prison's medical staff" that no reasonable person could find a "wanton disregard" or "deliberate indifference" of her medical

---

* Of the Southern District of New York, sitting by designation.

1. Archer's complaint also charged a number of officials of Albany County with violating her rights as a result of an alleged beating she suffered while she was temporarily an inmate at Albany County Jail. These defendants did not move for summary judgment and thus are not involved at all in this appeal, which is here as a result of an appropriate ruling under Fed.R. Civ.P. 54(b).

needs, the district court concluded that there were no material disputed facts and dismissed the causes of action based on the alleged inadequate care. This appeal followed.

■ It appears from the affidavits filed by appellees that Archer's case may well be without merit. As Judge Werker observed, appellant received extensive medical attention, and the records maintained by the prison officials and hospital do substantiate the conclusion that appellees provided Archer with comprehensive, if not doting, health care. Nonetheless, Archer's affidavit in opposition to the motion for summary judgment does raise material factual disputes, irrespective of their likely resolution. For example, Archer identifies intentional efforts on the part of defendants to delay her access to medical care at a time she was in extreme pain. Specifically, her affidavit alleges that after she was returned to Dutchess County Jail on April 23, 1981, following an alleged beating at Albany County jail:

2. ... I asked the admitting office for medical help due to the pain in my stomach, arms and back.

3. Despite numerous requests, I was not taken to a hospital for approximately five hours. During that delay, I told a doctor and several matrons or correction officers that I needed emergency attention for myself and my baby.

4. During this delay, I was the subject of a disciplinary hearing. I told the hearing committee I was in pain from a beating at Albany County Jail and needed to go to the hospital. They continued the hearing.

....

11. ... I told the hearing committee I wanted to lay down because I was in a lot of pain and was worried about my baby. They continued the hearing.

12. I had cramps and pain in my stomach from the time I arrived at Dutchess County Jail on April 23, 1981 until I was taken to the hospital on May 4, 1981.

13. During those twelve days of pain, I started vaginal bleeding and was told that there was no need to go to a hospital because if I was going to have a miscarriage I would have it wherever I was.

14. During those twelve days of pain, I told Dr. Teclaw that I felt something was wrong with my baby because I wasn't feeling any movement and I asked to be taken to the Hospital. Dr. Teclaw refused to send me to the hospital.

15. During those twelve days of pain, I asked many matrons and correction officers in the prison to try to get me to the hospital.

These assertions, however disputed, do raise material factual issues. After all, if defendants did decide to delay emergency medical aid—even for "only" five hours—in order to make Archer suffer, surely a claim would be stated under *Estelle.*

The affidavits supporting the grant of summary judgment note that Archer herself admitted in the course of a deposition that she was seen by the DCJ doctor in the matron's office about two hours after her return from Albany on April 23, and that the doctor agreed that she should be taken to a hospital as she requested. While appellees concede that Archer was not taken to a hospital until several hours later, following a three-hour disciplinary hearing, they assert that once there she told the hospital staff she had been beaten and was in a lot of pain, that she was given an X-ray of her wrist, that her wrist was put in a cast, and that her cuts were bandaged. Appellees assert that she was not then bleeding vaginally. Appellees' argument is that appellant's complaints centered around physical problems other than her gynecological condition, that she did not "spot" or "bleed" until May 1 or May 2, 1981, and that shortly afterward, on May 4, she was taken to Vassar Brothers Hospital where she was diagnosed as having an incomplete spontaneous abortion. The point appellees seek to make is that whatever delay may have occurred on April 23 was irrelevant to the claim here pressed, which relates only

to gynecological complications allegedly not present on April 23.

But Archer alleges that she *had* brought her pregnancy-related problems to the attendant prison personnel during the interview on April 23, after the alleged beating. She alleges that her sanitary napkin had been examined by a nurse who informed her that if she was going to miscarry it would happen regardless whether she was in the hospital or the prison. Archer had also been seen by a second nurse who also advised her to stay off her feet. Appellees respond by noting that Archer was seen by a jail doctor on April 27, who observed that she was complaining of a "foul smelling discharge," and that she was again examined on April 30 when she was having a "slow" discharge. They argue that at most the facts make out a case of medical malpractice, but not "deliberate indifference."

We have no doubt that the same standards of medical care cannot be imposed upon a prison as are presumed to be realized at a hospital. Doubtless the problems of providing adequate medical care in a prison are exacerbated where an inmate is obstreperous and a disciplinary problem. But these are factual problems to be considered and weighed by the finder of fact where there is an underlying dispute as to whether legitimate medical claims were deliberately disregarded as punishment for past breaches of the disciplinary code, or for other invalid reasons. Appellees' arguments, many of which appear plausible and persuasive, would require us to make factual findings were we to accept them. This is not our role, nor was it appropriate for Judge Werker to make such findings in granting a motion for summary judgment.

Judgment reversed.

BONSAL, District Judge, dissenting.

I respectfully dissent.

In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court held that deliberate indifference to serious medical needs of prisoners constituted the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment, which bars the infliction of cruel and unusual punishments. However, in *Estelle*, the Court, through Justice Marshall, wrote that an inadvertent failure to provide adequate medical care cannot be said to constitute "unnecessary and wanton infliction of pain"; that medical malpractice does not become a constitutional violation merely because the victim is a prisoner; and that in order to state a cognizable claim under the Eighth Amendment a prisoner must allege acts or omissions sufficiently harmful to show deliberate indifference to serious medical needs as it is only such indifference that offends "evolving standards of decency," in violation of the Eighth Amendment.

The gravamen of Archer's Section 1983 complaint is that she was subjected to cruel and unusual punishment, in violation of the Eighth Amendment.

Archer had been transferred to the Albany County Jail from the Dutchess County Jail with four other female inmates, the transfer having been made necessary by overcrowding in the Dutchess County Jail. On April 23, 1981, her last day at the Albany County Jail, Archer was accused of participating in a "food fight" in the dining room, of defacing county property, and of participating in an assault upon a female correction officer who, as a result, was injured and had to be sent to the hospital. On the same day, Archer was returned to the Dutchess County Jail and within two hours of her arrival was examined by Dr. Broun and members of the nursing staff. Dr. Broun noted that her left wrist was bruised and somewhat swollen, that she had a small lesion on her left knee, and that she had three mild contusions on her right ear—which Archer told Dr. Broun had resulted from the fights in which she had participated earlier in the day at the Albany County Jail. Dr. Broun ordered that she be taken to St. Francis Hospital for X-rays of her left wrist and left knee, and he prescribed 100 mgs. of Sinequan to be taken at bedtime.

Before Archer was taken to St. Francis Hospital, a hearing required by the prison regulations was held in the Dutchess County Jail with respect to her participation in the incidents which occurred earlier that day at the Albany County Jail. Other than her subjective complaints of pain, there was no showing that the delay in taking her to the hospital until after the hearing had any adverse effects on her physical condition.[1] Following the hearing, she was given a copy of an "Incident Report" filed at approximately 6:45 p.m. on April 23, which charged her with disobedience of orders, destroying/altering county property, inciting a riot and assaulting and causing substantial bodily injury to a correction officer. Archer denied that she was guilty of any misconduct, and the record does not indicate that she lost any good time by reason of this report.

As Judge Werker stated in his opinion, no reasonable person could find that the delay on April 23, due to the hearing, constituted a wanton disregard of Archer's medical needs or was a proximate cause of her miscarriage on May 5. There is certainly nothing to show "deliberate indifference to serious medical needs of prisoners" or "unnecessary and wanton infliction of pain," which the Supreme Court in *Estelle* held was required to state a claim under Section 1983. Nor do I believe that Archer's subjective statements require a remand to the district court for further proceedings. Given our very limited federal jurisdiction, I would affirm the determination of the district court without prejudice to Archer's suing in the state courts if she believes she has a claim.

---

**1.** Archer suffered a miscarriage 13 days later, on May 5, but other than subjective statements contained in her affidavit which is described at some length in the majority opinion, there is not the slightest evidence that she had any symp-toms on April 23 relating to her subsequent miscarriage. As Judge Werker found, the first real symptoms of a gynecological problem appeared after April 23.