Aaron HARDING, Plaintiff,

v.

Robert H. KUHLMANN, Superintendent Woodbourne Correctional Facility, and Doctor (unknown), Woodbourne Correctional Facility, Defendants.

No. 84 Civ. 1796.

United States District Court,
S.D. New York.

July 19, 1984.

Aaron Harding, plaintiff pro se.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for defendants; Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., Howard L. Zwickel, Randolph Volkell, Asst. Attys. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Aaron Harding ("Harding"), an inmate at Woodbourne Correctional Facility, brings this action pursuant to 42 U.S.C. § 1983 (1982) against Woodbourne Superintendent Robert H. Kuhlmann, and an unknown doctor at the facility, alleging violation of his Eighth Amendment right to be free from cruel and unusual punishment. Defendants move for dismissal on the ground that the complaint fails to state a claim upon which relief can be granted.[1]

In his complaint, Harding alleges the following:

> On the 14th day of January, 1984, about 6:45 p.m.[,] I was playing a game of basketball in the gym at Woodbourne Correctional Facility, and in the course of the game I went up for a shot and came down on a [k]not/bubble in the floor and twisted my leg. I went to the infirmary and saw the nurse and she bandaged my ankle, as it. was split and bleeding. Thereafter, the doctor came and took off the wrappings, cleaned the split again, and advised me that I needed sti[t]ches, and gave me an[ ] injection for pain and gave me eight (8) stitches, and admitted me to the hospital. I was in the hospital for about ten (10) days and released.

---

**1.** In an affidavit submitted in response to the motion, Harding alleges additional facts not contained in his original complaint. Defendants do not oppose consideration of these allegations as part of plaintiff's complaint. Even as-suming that these additional allegations are properly before the Court, *but see* Fed.R.Civ.P. 12(b), they do not affect the Court's decision, *see infra* note 8.

On the 24th day of January, 1984, I returned to the hospital to inform the doctor that I [was] still having problems walking and pain. I requested a cane or crutche[ ]s, as the pressure on my leg from not having the sti[t]ches in seemed to have made it bleed again. I was refused my request and was placed on medical restriction. I received no medication for pain, only an ankle band, which was too tight.

I returned to the hospital on the 30th day of January, 1984, as the split opened up again and was swelling, and it was hard as a rock, and I was walking with a limp. On the 6th day of February, 1984, I returned, was avoided[,] and placed back in the hospital for a short period of time.

## DISCUSSION

■ Plaintiff's claim essentially alleges an unconstitutional denial of medical treatment. Such claims are tested by a "two pronged standard" that requires proper allegations of "serious medical needs and 'deliberate indifference' on the part of prison officials toward those needs."[2] Deliberate indifference, the second essential element, is properly pleaded by allegations of "intentional efforts on the part of [prison officials] to delay [plaintiff's] access to medical care at a time when [ ]he was in extreme pain[,]" and has made his medical problems known "to the attendant prison personnel[,]"[3] of "complete denial" of medical treatment,[4] or of a "reckless or callous indifference to the . . . safety of . . . prisoners."[5]

■ Plaintiff's allegations do not fall within these categories and do not otherwise suggest "deliberate indifference" to plaintiff's medical needs. The complaint states that, following his basketball injury, Harding sought out medical treatment on four separate occasions. As to the first, on January 14, 1984, plaintiff's only complaint appears to be that he was not given medication for pain until after he was seen by a doctor. He alleges no unreasonable delay in his receipt of treatment and the suggestion that prison personnel should have prescribed medication without instructions from a physician is obviously without merit. As to the second visit, he asserts that instead of being given crutches or a cane, as he requested, and drugs to ease pain, he was given an "ankle band" and placed on "medical restriction." Again, there is no allegation of delay in his receipt of medical treatment, or even that the treatment prescribed was contrary to applicable medical standards.[6] He gives no indication that prison officials did anything improper on the third occasion, January 30, 1984. As to the fourth, on February 6, 1984, he asserts he was "avoided." He does not specify the period during which he was treated in this fashion, but the complaint clearly indicates it was not long, as he was the same day

---

2. *Ferranti v. Moran,* 618 F.2d 888, 890 (1st Cir. 1980) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, (1976)); *see Archer v. Dutcher,* 733 F.2d 14, 15 (2d Cir.1984) (same); *Owens v. Coughlin,* 561 F.Supp. 426, 428 (S.D.N.Y.1983) (same).

3. *Archer v. Dutcher,* 733 F.2d 14, 16, 17 (2d Cir.1984); *see Todaro v. Ward,* 565 F.2d 48, 53 n. 6 (2d Cir.1977) ("delays of weeks and months in the treatment of glaucoma, chest pains, vaginal blood clots, liver disease, eye infections, hypertension"); *Williams v. Director of Health Servs.,* 542 F.Supp. 883, 884 (S.D.N.Y.1982) (four instances of failure to complete prescribed medical treatment).

4. *Feranti v. Moran,* 618 F.2d 888, 890 (1st Cir. 1980); *see Inmates of Allegheny City Jail v. Pierce,* 612 F.2d 754, 763 (3rd Cir.1979) (no "reasonable access to medical personnel qualified to diagnose and treat . . . illnesses and disturbances").

5. *Clark v. Taylor,* 710 F.2d 4, 9 (1st Cir.1983) (citing *Smith v. Wade,* 461 U.S. 30, ——, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983)) (intentional pouring of known carcinogen on plaintiff prisoner for purpose of detecting blood on skin amounts to "deliberate indifference" to medical needs).

6. *See Youngberg v. Romeo,* 457 U.S. 307, 323, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982) (action by civilly committed mental patient; § 1983 liability arises "only when the decision by the [medical] professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment").

"placed back in the hospital for a short period of time." He alleges no facts indicating that he had complained to prison personnel of an acute condition, and, without more, Harding's readmission to the hospital does not indicate that any delay in admitting him was the product of "deliberate indifference" to a "serious medical need." Taking all of Harding's allegations as true, and giving them a liberal construction,[7] the Court is compelled to find that the complaint fails to state a claim upon which relief can be granted.[8]

Accordingly, the complaint is dismissed.

So ordered.

---

**7.** *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam).

**8.** *See Archer v. Dutcher,* 733 F.2d 14, 16, 17 (2d Cir.1984).

Harding, in his complaint, asserts that he requested x-rays and none were "received" by the time he filed his complaint, Complaint at 3a, although allegations in his affidavit submitted in connection with the motion indicate x-rays were taken but then lost. *See* Harding Aff. ¶ 3. Defendants have submitted documents indicating x-rays were taken on January 17, 1984, three days after his admission to the hospital. *See* Randolph Volkell Aff., Ex. D. Whatever the facts concerning the taking of x-rays, which this Court may not resolve on this motion, a decision not to take any x-rays would not, under the circumstances alleged, be "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo,* 457 U.S. 307, 323, 102 S.Ct. 2452, 2462, 43 L.Ed.2d 28 (1982); *see Layne v. Vinzant,* 657 F.2d 468, 473 (1st Cir.1981) ("The right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice."). Moreover, even assuming x-rays should have been taken, Harding does not allege that a failure to take x-rays proximately caused him injury. *See Batista v. Rodriguez,* 702 F.2d 393, 398 (2d Cir.1983).

To the extent plaintiff seeks to hold Kuhlmann responsible for the condition of the basketball court, *see* Complaint at 4, the complaint is defective insofar as there is no allegation that Kuhlmann even knew or had reason to know of the alleged dangerous condition. *See Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978).