**Arthur HALL, Plaintiff,**

v.

**Christopher ARTUZ, Lawrence Zwillinger, and James Manion, Defendants.**

**95 Civ. 0272 (MGC).**

United States District Court, S.D. New York.

Feb. 11, 1997.

Arthur Hall, Attica Correctional Facility, Attica, NY, Pro Se.

Dennis C. Vacco, Attorney General of the State of New York, by Michael Kennedy,

Assistant Attorney General, New York City, for Defendants.

## MEMORANDUM OPINION AND ORDER

CEDARBAUM, District Judge.

Plaintiff Arthur Hall, a state prisoner incarcerated in Green Haven Correctional Facility ("Green Haven") during the time period relevant to this action, sues under 42 U.S.C. § 1983. He alleges that defendants violated his Eighth Amendment rights by denying him proper medical treatment. During the relevant time period, defendant Christopher Artuz was Superintendent of Green Haven, defendant Lawrence Zwillinger was Regional Health Services Administrator of Green Haven, and defendant James Manion was Medical Director of Green Haven. The parties have made cross-motions for summary judgment. For the reasons discussed below, plaintiff's motion is denied and defendants' motion is granted with respect to defendant Manion but denied with respect to defendants Artuz and Zwillinger.

### Background

Hall alleges in the Complaint that on May 20, 1994, Dr. Howard Baruch, an orthopedic specialist who was not affiliated with Green Haven, ordered that Hall receive physical therapy following knee surgery. Hall claims that he did not receive physical therapy as ordered and that the lack of physical therapy has caused his legs to become very weak and painful. He claims that as a result, he is now unable to climb up or walk down stairs. The Complaint also alleges that Hall's medically required knee braces were taken from him on April 30, 1994, and that he was forced to walk without them until October 7, 1994.[1] Hall also alleges that each of the defendants was aware that he was not receiving physical therapy as the doctor had ordered and that each of the defendants was deliberately indifferent to satisfying his medical needs. He claims that Manion reviewed Dr. Baruch's

1. Plaintiff's "Response to Answer," which was filed with the Court on May 18, 1995, seventeen days after the defendants' Answer was filed, also alleges that Attica Correctional Facility, where Hall was transferred in February 1995, "doesn't have any type of physical therapy program that

will help plaintiff to meet his medical needs," and that the defendants knew that Attica did not have the facilities necessary to provide physical therapy. Plaintiff has not further argued this claim in the papers submitted for the pending summary judgment motions.

report as part of Manion's responsibility to review and carry out the recommendations of outside specialists. He further alleges that he wrote Zwillinger and Artuz repeatedly about his failure to receive physical therapy. He also alleges that on June 9, 1994, he submitted an inmate grievance concerning his failure to receive physical therapy and knee braces.

The dates in Hall's Complaint do not seem to be entirely accurate. They are internally inconsistent and at variance with dates suggested in other papers submitted by Hall in connection with these motions. But, it is undisputed that Hall has had multiple knee surgeries. Medical records[2] show that Dr. Baruch performed surgeries on September 2, 1992, December 7, 1992, December 30, 1992, and January 20, 1993. Def. Ex. B. The records also show that Hall refused to be evaluated for physical therapy on March 9, 1993. Def. Ex. B. It is undisputed that Hall was placed on a course of physical therapy at some point after his last knee surgery. Records dated in April 1993, May 1993, October 1993, November 1993, and March 1994 prescribe regimens of physical therapy. Def. Ex. B. Records beginning in June of 1993 recommend knee braces. Def. Ex. B. The medical record on which plaintiff appears to rely is a report of a medical consultation dated May 20, 1994, which recommends "therapy" and braces. Attach. Pl.'s Aff.; Def. Ex. B. The signature of the consulting doctor on that report is illegible but presumably it is the report of Dr. Baruch to which plaintiff refers in his Complaint.

Medical records also show that Hall attended physical therapy from June 2, 1993, to May 9, 1994, for a total of 21 visits. Def. Ex. C. During that time, Hall refused physical therapy six times. Among the reasons he gave for each of these refusals were the fact that he had not been fully informed of the consequences of treatment, that his knees were swollen and sore, that the doctor had ordered him not to attend physical therapy because his knees were to be operated on again, and that it was too late in the day. The records also show two occasions on which Hall did not attend scheduled physical therapy because no "runner" was available and one occasion on which Hall did not attend scheduled physical therapy and an officer stated that they "didn't get call-out" and it was "too late" because Hall could "only attend when no general population inmates are at physical therapy." A report dated December 21, 1993, notes that physical therapy had been prescribed on November 2, 1993, but that Hall had not yet been called for physical therapy.

From May 5, 1994, to February 4, 1995, Hall was in the Special Housing Unit ("SHU") for disciplinary reasons. Def. 3(g); Def. Ex. E. Defendants assert that during the time plaintiff was in SHU, he continued to receive medical treatment for his knees, including anti-inflammatory medication, rest, x-rays, and permission to use knee supports when he left SHU. Def. Ex. H. Medical records confirm that plaintiff was examined for knee complaints on multiple occasions while he was in SHU. Def. Ex. H. These records do not mention physical therapy, although many of them do · refer to knee braces. Defendants do not contend that Hall received any physical therapy after May 9, 1994.

### Discussion

■ As a preliminary matter, defendants argue that this Court lacks subject matter jurisdiction over plaintiff's damage claims since claims for money damages against state officials sued in their official capacities are barred by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 101–02, 104 S.Ct. 900, 908–09, 79 L.Ed.2d 67 (1984); *Farid v. Smith,* 850 F.2d 917 (2d Cir.1988). Defendants state in conclusory terms that "the allegations contained in the Complaint reaffirm that this is an official capacity action" and that "[n]owhere in the caption or the body of the Complaint are defendants Artuz, Zwillinger and Manion named in their individual capacities." While it is true that the Complaint itself does not expressly state that Hall is suing the defendants in their individual capacities, Hall's

---

2. Plaintiff incorporates the medical records submitted by the defendants into his motion papers by requesting that the court do an in camera inspection of those records.

"Response to Answer," filed May 18, 1995, states that "state officials can be held liable in individual capacities under § 1983." Thus, the Complaint and the Response to Answer together suggest that Hall is suing the officials in their individual capacities. Accordingly, I treat this action as one against the defendants in their individual capacities.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat a motion for summary judgment brought by the party that does not bear the burden of proof, the party with the burden of proof must make a showing sufficient to establish the existence of every element essential to that party's claim. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In deciding whether a genuine issue of material fact exists, the court must "examine the evidence in the light most favorable to the party opposing the motion, and resolve ambiguities and draw reasonable inferences against the moving party." *In re Chateaugay Corporation,* 10 F.3d 944, 957 (2d Cir.1993) (citation omitted). In addition, because plaintiff proceeds pro se, I must read his papers liberally and "interpret them to raise the strongest arguments that they suggest." *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (citation and internal quotation marks omitted); *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam) (pro se complaints held to less stringent standards than pleadings drafted by attorneys).

### *Eighth Amendment Claim*

In order to succeed on his § 1983 claim based on a violation of the Eighth Amendment by inadequate prison medical care, Hall must prove "deliberate indifference" to his "serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The "deliberate indifference" standard encompasses both an objective and a subjective prong. *Wilson v. Seit-*

*er,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2323–24, 115 L.Ed.2d 271 (1991); *Hathaway v. Coughlin,* 99 F.3d 550 (2d Cir.1996). First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Hathaway,* 99 F.3d at 553. Second, the prison official must act with a sufficiently culpable state of mind. *Id.* A prison official is not deliberately indifferent unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994).

### 1. *Serious Medical Needs*

Defendants first argue that summary judgment is justified because Hall's condition is not sufficiently serious to meet the objective prong of the "deliberate indifference" standard. For this, they point only to records that demonstrate that Hall voluntarily refused physical therapy on six different occasions between June 1993 and May 1994. Defendants argue that if Hall's condition had been such that his physical therapy was a serious medical need, he would not have refused it. While this is an argument that defendants may advance at trial, it does not eliminate the genuine issue of fact raised by the evidence that Hall has offered as to the seriousness of his condition.

It is undisputed that Hall has had multiple knee surgeries and was on a regimen of physical therapy for a significant period of time. Medical records show that Hall has metal screws in his right knee. Def. Exs. B & H. Plaintiff has also attached to his affidavit a letter to Deborah Schneer, Esq., of Prisoner's Legal Services of New York, from Alicia Spears, RPA–C, whom Hall describes in his Statement of Undisputed Facts as a "medical consultant." The letter concerns Hall and states: "In answer to your second question, can failure to provide (or to delay) physical therapy result in deterioration? The answer is absolutely, yes. Early, specific rehabilitation is key to a timely functional return. Without it there is weakness, atrophy, decreased function, neuropathy, etc."

Attach. Pl.'s Aff. The letter also states, based on a review of Hall's medical records, that Hall "has decreased ability to move his leg because of lack of activity. He is out of shape. No physical therapy?" Attach. Pl.'s Aff. Medical records dated March 1, 1995, and June 5, 1995, show findings of atrophy in the right leg and swelling of the right knee. Attach. Pl.'s Notice of Mot. Plaintiff alleges that his legs have become very weak and painful because of his failure to receive physical therapy and that he is unable to walk up or down the stairs. This evidence taken together is sufficient to raise a genuine issue of material fact as to whether Hall's physical therapy and knee braces constituted serious medical needs.

### 2. Subjective Deliberate Indifference

Defendants also argue that they did not subjectively act with "deliberate indifference." Defendants point out that while Hall was in custody, he received extensive treatment for his knee problems. Medical records confirm that while in custody, Hall underwent four knee surgeries, was prescribed medication and placed on several physical therapy programs, and was examined for knee problems many times both by Green Haven medical personnel and by outside orthopedic consultants. Def. Exs. B & H. The fact that Hall had many medical consultations concerning his knees, however, does not establish that he was not denied medically necessary physical therapy. See Archer v. Dutcher, 733 F.2d 14 (2d Cir.1984) (allegations of delay of medical care in order to make plaintiff suffer sufficient to withstand motion for summary judgment despite records of extensive and comprehensive medical care).

Furthermore, the records of Hall's physical therapy supplied by defendants stop at May 9, 1994. Defendants do not claim that Hall received any physical therapy following that date. But the deprivation of physical therapy that is the subject of this suit is alleged by Hall to have started after May 20, 1994. While the medical report dated May 20, 1994, prescribes "therapy" and does not specifically mention "physical therapy," de-

fendants have not argued that the report does not refer to physical therapy. Therefore, Hall's allegation that he was denied physical therapy after May 20, 1994, raises a genuine issue of fact as to whether he was, in fact, deprived of medically necessary physical therapy.

With respect to Hall's knee brace,[3] defendants argue that it was confiscated upon his entry into SHU for security reasons because it was made with a metal pin. Medical records and a memorandum to Zwillinger dated June 24, 1994, support that assertion. Def. Exs. G & H. However, defendants also claim that Hall was given permission to use his brace whenever he left his unit. Hall's allegation that he was forced to walk without the brace for approximately six months conflicts with that claim. Plaintiff has also submitted a memo from Zwillinger to Hall dated August 15, 1994, that states: "[P]lease be advised that you have a valid permit and need for the knee brace. The Medical Department issued this brace to you, and you should be wearing it when you are climbing steps or doing any other type of physical activity." Attach. Pl.'s Aff. This memo could be interpreted to support Hall's allegation that he was not permitted to use the brace, at least prior to August 15. Furthermore, medical records offer some support for Hall's allegation that he was not permitted to use his brace until at least October 1994. A medical record dated June 16, 1994, notes that on that date, Hall requested the confiscated knee brace, while a record dated July 7, 1994 states that Hall still had not received braces. Def. Ex. H. Records dated August 3, 1994, September 23, 1994, and October 7, 1994, refer to knee supports but do not make clear whether those supports were being prescribed for or given to Hall or whether they were being requested by Hall. Def. Ex. H. A record dated November 21, 1994, states "permit to use B/L knee supports when [Hall] leaves the unit." Def. Ex. H. It is not clear whether this is a notation that a permit was given to Hall on November 21 or whether this record is merely noting the prior existence of a permit. Taken as a whole, however, this evidence raises a genuine issue

---

3. The papers are inconsistent as to whether one or both braces were confiscated.

of material fact as to whether Hall was actually permitted to use his brace from April 30, 1994, to October 7, 1994.

■ In order for Hall's claims to survive summary judgment based on the objective prong of the deliberate indifference standard, Hall must also present sufficient evidence to raise a genuine issue of fact as to whether each defendant knew of and disregarded an excessive risk to Hall's health. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). With respect to defendant Manion, Hall has not met that burden. Apart from the unsupported and conclusory allegation in the Complaint that Manion reviewed Dr. Baruch's recommendation of physical therapy as part of Manion's responsibility to review and carry out the recommendations of outside specialists, Hall does not offer any evidence or make any allegation linking Manion to Hall's failure to receive physical therapy. Moreover, Hall's affidavit does not mention Manion at all.

■ With respect to defendants Zwillinger and Artuz, however, Hall has presented sufficient evidence to raise a genuine issue of fact as to whether those defendants knew of and disregarded the risk to Hall's health. In the Complaint, Hall alleges that he wrote to both Artuz and Zwillinger about his failure to receive physical therapy. Hall has also attached to his Notice of Motion two letters to Zwillinger from staff attorneys at the Legal Aid Society dated August 13, 1993 (unsigned), and August 12, 1994. As of their respective dates, those letters informed Zwillinger that Hall was "experiencing difficulties in accessing physical therapy." The 1994 letter also states that Hall would like his braces to be returned to him. Furthermore, a memo from Artuz to Hall, dated January 6, 1994, a copy of which was sent to Zwillinger, acknowledges receipt of Hall's "letter concerning physical therapy" and states that Hall's letter was forwarded to Zwillinger for action. Attach. Pl.'s Aff. A letter from Zwillinger to Hall dated August 15, 1994, a copy of which was sent to Artuz, states "[i]n response to your letter to Supt. Artuz of 8/1/94, please be advised that you have a valid permit and need for the knee brace." This evidence taken together supports Hall's contention that both Zwillinger and Artuz were aware that Hall was being denied access to medically necessary physical therapy and knee braces. That awareness, coupled with the evidence already set forth relating to whether Hall was deprived of necessary medical care, is sufficient to raise a genuine issue of material fact as to whether Zwillinger and Artuz were deliberately indifferent to Hall's medical needs.

Defendants make one final argument. They argue that a request by Hall, made in a letter dated May 18, 1994, to be "taken off all medical holds" because he felt that Green Haven was not fully taking care of his medical needs, was in effect a request to discontinue treatment and therapy. Def. Ex. F. But defendants offer no evidence to support that interpretation. It is unclear from the papers submitted what a "medical hold" entails. A letter from Zwillinger to Hall dated September 22, 1994, which is purportedly a response to a letter from Hall dated September 15, 1994, states that Hall's previous request to have his medical hold waived "is not affected in any way by any future specialist appointments." The letter goes on to state that "[m]edical care will not be denied or affected in any way by your desire to waive your medical hold status." Attach. Pl.'s Aff. Therefore, there is a genuine issue of material fact as to the meaning and effect of Hall's request to be taken off all medical holds.

### Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is granted with respect to defendant Manion but denied with respect to defendants Artuz and Zwillinger.

SO ORDERED.