**Donald REID, Plaintiff,**

v.

**Charles ARTUS, Superintendent of Green Haven Correctional Facility, Defendant.**

**No. 95 CIV. 0384(JES).**

United States District Court, S.D. New York.

Nov. 13, 1997.

---

Donald Reid, Auburn, NY, pro se.

Dennis C. Vacco, Atty. Gen. of the State of New York, Michael Cohen, Asst. Atty. Gen., of counsel, New York, NY, for defendant.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Incarcerated plaintiff *pro se* Donald Reid ("Reid") brings the instant action pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights, specifically that while he was incarcerated and on keeplock status at Green Haven Correctional Facility ("Green Haven"), he was denied running water and asthma medication for eight days. Pursuant to Federal Rule of Civil Procedure 56, defendant Christopher Artuz[1] ("Artuz") moves for summary judgment. For the reasons set forth below, Artuz's motion for summary judgment is granted.

## BACKGROUND

In his Complaint, Reid alleges that while he was confined to keeplock at Green Haven, he informed several prison "personnel" that he was in need of his asthma medication, his running "water was cut-off afterward," and he was "without access to water and medication for approximately eight-days."[2] Form to be Used by Prisoners in Filing a Complaint Under The Civil Rights Act, 42 U.S.C. § 1983, dated November 30, 1994 ("Complaint"), at 3–4; *see also* Defendant's

---

1. Reid incorrectly identifies Christopher Artuz, superintendent of Green Haven, as "Charles Artus" in the caption of his Complaint.

2. Superintendent Artuz vigorously disputes Reid's alleged lack of running water and has introduced evidence that although Green Haven did turn off all running water in the B–Block building where Reid was housed on November 3, 1994 (the third day of Reid's detention in keeplock), *see* Def.'s Not. Mot. "Artuz Affidavit" Exh. B (Green Haven Corr. Facility Maintenance Control Center General Report dated May 5, 1995), in order to facilitate a security search for contraband and to prevent another inmate from discarding contraband via a toilet, *see id.* ¶ 13, running water was restored to the B–Block building on the same day. *Id.* Although these facts are in dispute, on a motion for summary judgment the Court must accept plaintiff's factual contentions as true. *See Archer v. Dutcher,* 733 F.2d 14, 15 (2d Cir.1984).

Notice of Motion of Summary Judgment pursuant to Rule 56 of the Fed.R.Civ.P. ("Def.'s Not. Mot.") "Cohen Affidavit" Exh. A (Deposition of Donald Reid dated December 18, 1996 ("Reid Dep.")) at 18.

On November 6, 1994, Reid's sixth day in keeplock, Reid wrote a letter to Superintendent Artuz in which he complained, "[t]onight one of your officer [sic] C.O. Lewis refuse [sic] me my breathing treatment,"[3] and that an unidentified corrections officer failed ·to escort him to Green Haven's medical clinic for a breathing treatment after Reid had requested this during the "4 pm go around." Def.'s Not. Mot. "Artuz Affidavit" (Affidavit of Christopher Artuz dated February 5, 1997) Exh. C (Letter from Donald Reid to Superintendent C. Artuz dated November 6, 1994). While Reid has acknowledged that he sent Superintendent Artuz only one letter while he was in keeplock, *see* Reid Dep. at 33, this letter contains no statements that Reid was without running water nor that he was deprived his asthma treatment at any other time. *See* Def.'s Not. Mot. "Artuz Affidavit" Exh. C.

On November 8, 1994, in response to this letter, Artuz assigned Deputy Superintendent of Security Cyril Coefield to investigate and respond to Reid's complaint and to report his findings back to Artuz. *See* Def.'s Not. Mot. "Artuz Affidavit" ¶ 15; *id.* Exh. D. In accordance with Green Haven's internal procedures, the matter was then referred for investigation to Lieutenant T. Quackenbush, the shift watch commander on whose shift the alleged failure occurred, *see* Def.'s Not. Mot. "Artuz Affidavit" Exh. F (Letter from T. Quackenbush to D. Reid dated November 28, 1994), who then referred the matter to Sergeant Hobbs to investigate and to interview the parties. *See id.* Following his investigation, Hobbs found that although C.O. Lewis did not remember anyone bringing Reid's request to go to the clinic to his attention, a prison disturbance in one of Green Haven's recreation yards and a power outage in the B–Block building where Reid was being housed may have contributed to the confusion which may have caused the failure to provide Reid his breathing treatment at the clinic the evening of November 6, 1994. *See id.*

Superintendent Artuz moves for summary judgment, claiming, *inter alia*: that Reid's claims do not rise to the level of an Eighth Amendment violation; that Reid has failed to show that Superintendent Artuz was personally involved in the constitutional violations alleged; that Artuz is entitled to qualified immunity; and that the Eleventh Amendment bars this action against Artuz in his official capacity.[4] *See* Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem.") dated February 7, 1997, at 6, 10, 13, 15.

## DISCUSSION

Accepting all facts alleged in the complaint as true, Reid's allegation that he was denied running water and asthma medication for eight days does not rise to the level of an Eighth Amendment violation.

*Denial of Running Water*

██ In order to make out a section 1983 claim for a violation of a prisoner's Eighth Amendment rights, the action must constitute "an unnecessary and wanton infliction of pain," or be "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976). At a minimum, there must be " 'at least some allegation of a conscious or callous indifference to a prisoner's rights.' " *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983) (*quoting Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir.1981)).

In a nearly identical case, this Court found that no Eighth Amendment violation had occurred where an inmate, who had not been

---

**3.** As an asthmatic, Reid could receive Ventolin Nebulizer (breathing) treatment, administered in Green Haven's medical clinic, up to three times a day as needed. *See* Def.'s Not. Mot. "Burns Affidavit" (Affidavit of Donna Burns, R.N. dated February 5, 1997) ¶ 3.

**4.** Although twice given the opportunity to respond to Artuz's motion for summary judgment, Reid has failed to file a response to date. On September 8, 1997, the Court took the motion under submission.

deliberately denied necessary liquids, was without running water in his cell for nine days. *See Johnson v. Commissioner of Correctional Services,* 699 F.Supp. 1071 (S.D.N.Y.1988). Here, Reid admitted during his deposition that he received water "when I needed it," see Reid Dep. at 48, "several times" a day, *see id.,* "every day" during his eight days in keeplock, *id.,* and he was able to take showers in accordance with keeplock rules. *Id.* at 30. Furthermore, Reid testified that on the first day his water was turned off, he refused an offer made by a nurse "Sally" at Green Haven's medical clinic to have him admitted to the facility's hospital after Reid told her that he had no running water in his cell. *See id.* at 22–24. In light of the foregoing, Reid has failed to state a claim from which a jury might infer a conscious or callous indifference to his rights rising to the level of an Eighth Amendment violation.[5]

*Denial of Medication*

■ To establish a claim that prison officials unconstitutionally deprived an inmate of adequate medical care, a prisoner must prove that the officials displayed " 'deliberate indifference to [his] serious medical needs.' " *See Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (*quoting Estelle,* 429 U.S. at 104, 97 S.Ct. at 291). "Deliberate indifference" must have both a subjective and an objective component. *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

In this case, however, the unrefuted evidence affords no rational basis for an inference of deliberate indifference and precludes a reasonable finding that Artuz acted in bad faith or intentionally deprived plaintiff *pro se* of, or delayed his access to, effective medical treatment.

Reid has admitted that asthma was the only medical condition for which he was re-

ceiving treatment during the relevant period, *see* Reid Dep. at 25; that his treatment consisted of pills, an inhaler and a "breathing treatment" administered only in the facility's medical clinic, *id.;* that his pills and inhaler were with him, in his keeplock cell, at all times, *see id.* at 27–28; and that he went to the medical clinic for his breathing treatment *"every day* ... sometimes three, sometimes four, sometimes six" times a day while he was in keeplock. *Id.* at 28–29 (emphasis added).

Furthermore, Reid's medical records confirm that he was repeatedly given medical attention and received his breathing treatment and/or asthma medication every day that he was in keeplock. *See* Def.'s Not. Mot. "Burns Affidavit" ¶¶ 4–5, Exh. A (State of New York, Dept. of Corr. Serv., Treatment and Medication Records of D. Reid, 93A0410, for the months of October 1994 and November 1994), Exh. B (State of New York, Dept. of Corr. Serv., Ambulatory Health Record of D. Reid, 93A0410, for the dates 10/28/94, 11/2/94—11/4/94, 11/07/94—11/8/94).

Moreover, in his only letter to Superintendent Artuz regarding the events in question, *see* Reid Dep. at 33, Reid complained of being denied his breathing treatment that one evening only. *See* Def.'s Not. Mot. "Artuz Affidavit" Exh. C. That letter is bereft of any indication that Reid was without running water, nor does it mention any other deprivations of his asthma medication except for the evening of November 6th. *See id.*

In light of the foregoing, Reid's allegations, even under a most generous reading, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), fail to establish that Artuz's conduct was "repugnant to the conscience of mankind" or incompatible with the "evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102, 106, 97 S.Ct. at 290, 292 (citations and

---

5. Although from a generous, albeit isolated, reading of the main allegation in Reid's Complaint one could infer that Reid's water was shut off in retaliation for his having requesting medical attention, *see* Complaint at 3, ¶ IV. ("his water was cut-off afterward"), Reid completes the statement of his claim by referring to another part of his Complaint, *see id.* ("See, Section II C–2 of page

2 of this Application"), in which he specifically states that his "[m]edication was withheld until complete work on water-line was finished...." *Id.* at 2, ¶ II.C.2. Therefore, on the face of the complaint, it is clear that Reid was aware that his running water was turned off because of maintenance work and not in retaliation for his requesting medical treatment.

internal quotations omitted). It follows that the medical care provided to Reid while in keeplock establishes no basis for a constitutional violation.

In any event, even if the Court were to find Reid's constitutional claims meritorious, Artuz would nevertheless be shielded from personal liability under the doctrine of qualified immunity and because Reid has failed to establish Artuz's supervisory liability.

### Qualified Immunity

Qualified immunity shields government employees from liability for conduct which "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or where it was objectively reasonable for them to believe that their actions did not violate such rights. *See Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987) (citations omitted); *Oliveira v. Mayer*, 23 F.3d 642, 648 (2d Cir. 1994), *cert. denied*, 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995).

Here, Artuz's action upon receipt of Reid's November 6, 1994 letter was objectively reasonable. *See Gonzalez v. Coughlin*, 1996 WL 496994 (S.D.N.Y.1996). Artuz responded promptly to Reid's complaints and assigned members of his staff to investigate and report their findings back to him. *See supra* at 193. Clearly, Artuz's acts are shielded under the doctrine of qualified immunity.

### Supervisory Liability

Under section 1983, a supervisory official is not liable for civil rights violations committed by his subordinates absent personal involvement by the official in the unlawful act. *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986). To establish personal involvement, a plaintiff must show that the supervisory official directly participated in the violation, failed to remedy an offense after learning about it through a report or appeal, created or continued a policy or custom which allowed the violation to occur, or was grossly negligent in the managing of subordinates who caused the unlawful

condition. *See Williams*, 781 F.2d at 323–24. Where, as here, a plaintiff fails to allege, let alone establish, any factual basis upon which a fact finder could reasonably conclude personal involvement by the supervisory official defendant, the claim must be dismissed.

Here, Reid has utterly failed to allege any facts from which the Court could infer any direct participation by Artuz in the alleged deprivations, that Artuz created or continued a policy or custom which allowed the violation to occur, or that Artuz was grossly negligent in managing the subordinates who caused the unlawful condition. Nor could a rational inference be drawn that Artuz failed to remedy the situation after learning about it. Artuz promptly assigned an officer to investigate Reid's complaint one day after he received notice, *see* Def.'s Not. Mot. "Artuz Affidavit" ¶¶ 14–15, and Artuz notified Reid of the commencement of the investigation by letter dated November 8, 1994. *See id.* Exh. E (Letter from Christopher Artuz to D. Reid dated November 8, 1994). Moreover, Reid's medical records confirm that he received treatment the morning of November 7th and everyday thereafter while he was in keeplock. *See* Def.'s Not. Mot. "Burns Affidavit" Exhs. A, B.

### Eleventh Amendment

Finally, since the only relief which Reid seeks is a "punitive award in the amount of One million Dollars, from defendant," Complaint at 5, ¶ V., the Eleventh Amendment would bar any suit for money damages against Artuz acting in his official capacity. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 120, 104 S.Ct. 900, 918–19, 79 L.Ed.2d 67 (1984).

## CONCLUSION

For the reasons set forth above, Superintendent Artuz's motion for summary judgment is granted. The Clerk of Court is hereby ordered to enter judgment for defendant in the above-captioned action and to dismiss plaintiff *pro se*'s action with prejudice.

It is **SO ORDERED**.